36944.  NUNNALLY *et al. v.* SHOCKLEY.

DECIDED FEBRUARY 21, 1958—REHEARING DENIED MARCH 11, 1958.

304

*Orrin Roberts, William P. Whelchel,* for plaintiffs in error.

*D. M. Pollock, A. M. Kelly, Stephens, Fortson, Bentley & Griffin, Edwin Fortson,* contra.

QUILLIAN, Judge. ■ The defendants insist that *Nunnally* v. *Shockley,* 91 *Ga. App.* 767 (87 S. E. 2d 115) and *Shockley* v.

*Nunnally,* 93 *Ga. App.* 437 (91 S. E. 2d 793), appeals from jury trials in which Mrs. Shockley sought damages arising out of the same fall alleged in the present petition, established the law of the case adversely to the claim of the plaintiff. With this contention we cannot agree. In those cases it was held that, no notice of the defective threshold having been received by the landlords, the verdict was unauthorized by the evidence because the threshold, where the injury occurred, was on premises to which the defendants had no right of entry. It will be noted that in those cases a right of entry by the landlords was neither pleaded nor proved. In the present case the petition alleged that the landlords, through their agent, retained and exercised the right to enter the Crossley store for the purpose of inspecting and repairing it. This allegation placed an entirely different burden of care upon the defendants from that alleged in Mrs. Shockley's petition (*Dobbs* v. *Noble,* 55 *Ga. App.* 201, 203, 189 S. E. 694), and the decision in her case did not establish the law of the case as to the defendants' duty to discover and repair the defective threshold.

Mrs. Shockley testified in part that: she was entering the Crossley store to purchase some ice cream; as she opened the screen door the toe of her shoe hung on the threshold and it moved and she fell; there was nothing on the threshold to indicate that it would move; she had received no warning as to the fact that the threshold would move.

J. B. Hammond testified in part that: he went back and looked at the threshold strip after Mrs. Shockley had been carried out of the store; he could tell that the strip had been knocked loose because of the fresh dirt under it; the threshold strip had been knocked to one side at approximately a 50 degree angle.

Paul Cleaton testified in part that: he examined the threshold and there was a big-headed roofing nail in the east side of the threshold, but the west side was loose; he carefully examined the threshold and found no evidence of any nail ever having been put in it to hold it to the floor.

Mell Conner testified in part that: he inspected the threshold and it was loose on the west side; there was a roofing nail in one end and there was no nail in the other end of the threshold strip; the threshold could be moved back and forth with your

toe; there was no evidence that a nail had ever been put in the loose end of the threshold; in his opinion the roofing nail was not the type that you normally see fastening a door sill.

The above evidence was sufficient to present a question for the jury as to whether the threshold strip was maintained in a negligent manner and whether this negligence was the proximate cause of Mrs. Shockley's injuries.

Whether or not the proof submitted by the plaintiff was sufficient to show actionable negligence on the defendant's part, and whether the defendant's negligence, or Mrs. Shockley's negligence was the proximate cause of her injuries, were questions for the jury.

When a tenant assumes exclusive possession of the premises the landlord is responsible only for such defects of which he has notice, but if the landlord either retains or assumes a right of entry he is then liable for such defects as should be discovered by the exercise of ordinary diligence. *Davis* v. *City of Atlanta,* 84 *Ga. App.* 572, 576 (66 S. E. 2d 188); *Dobbs* v. *Noble,* 55 *Ga. App.* 201, 203, supra.

In regard to whether the Trust Company of Georgia, an agent of the defendants, inspected the premises, M. G. Crossley, owner of the store in which Mrs. Shockley fell, testified in part that: "When the Trust Company of Georgia took over the property, I think Mr. Adams let us know they had taken over in a personal letter. But he did come in periodically every 4 to 6 weeks, and he would come in my place and look over my place and talk to me about it. He would look around and see what condition it was in. I didn't call on him to come and make those visits, he just appeared and looked around."

As to this same issue, C. W. Shurlock, another tenant in the building testified in part that: "While I was in the building Mr. Deadwyler, representative of the Trust Company of Georgia, came down a few times and made a few suggested changes and repairs in the office. When the Trust Company of Georgia took over the operation and management of the property they made some changes and adjustments that they thought were necessary. They examined the building, I think all the property, and made some minor repairs to put the property in first class condition; they painted the inside of the building and they moved the par-

tition that divided our office from the main lobby forward and increased the size of the office. This was as the result after their general inspection of all the property."

The above testimony was sufficient to present an issue for the jury's determination as to whether the defendants through their agent, the Trust Company of Georgia, assumed the right to enter and inspect the premises, and if the jury decided the above question in the affirmative, as to whether the defendants' agent was negligent in failing to ascertain that the threshold strip was defective and repair the same. The general grounds are without merit.

■ Special ground 1 of the amended motion for new trial excepted to the trial judge's failure to charge the jury that "the husband would have no right of recovery against these defendants unless the wife, for whose services he was suing, had a right to recover of these defendants." The ground failed to state how this omission was harmful to the defendants and was too incomplete to be considered by this court. *Jones* v. *State*, 50 *Ga. App.* 14 (1) (176 S. E. 824); *Morris* v. *State*, 185 *Ga.* 67 (2) (194 S. E. 214); *Smallwood* v. *Pollard*, 54 *Ga. App.* 617, 618 (188 S. E. 594).

■ Special ground 2 made a general exception to 5 excerpts of the charge. This ground is without merit, because some, if not all, of the principles charged were correct and applicable to the facts of the case. *Louisville & Nashville R. Co.* v. *Bean*, 49 *Ga. App.* 4 (174 S. E. 209).

■ Special ground 3 assigns as error the judge's failure to charge the following: "to the effect that where the landlord has neither possession nor right of possession, he must have reasonable notice of the defective condition of the premises before he can be held liable for injuries resulting to his tenants or their invitees from such defects." This ground is without merit because this principle was fully covered by the following charge which was given the jury: "The landlord is under no duty to inspect the rented premises in order to keep informed as to their condition; he cannot be held liable for damages caused from defects in the rented premises occurring after he has parted with the possession, unless he has been notified thereof, and has had a reasonable time in which to make repairs, and that would apply where there is an agent to supervise the building."

■ Special ground 4 complains of the following charge: "I charge you further that consortium, that is the right of a husband or wife to the conjugal fellowship, cooperation and aid of the other in every conjugal way, may be considered in the loss of services of the wife by a husband." The defendants insist that there was no evidence that the plaintiff had lost the consortium or conjugal relations of his wife. Mrs. Shockley testified that she was not able to do her housework for some time after the accident. The plaintiff testified that Mrs. Shockley was not able to do her housework for a year or a year and a half as a result of her injuries; he often had to defer going to work in order to help her with things around the house that she was not able to do. Services constituting a part of consortium, the charge was supported by evidence and the ground is without merit. *Hobbs* v. *Holliman,* 74 *Ga. App.* 735, 739 (41 S. E. 2d 332); 26 Am. Jur. 637, § 9.

■ In special ground 5 error is assigned on the following charge: "When thus impeached he may be sustained by proof of general good character, the effect of the evidence to be determined by the jury." The defendants contend that the charge was harmful because Mrs. Shockley was impeached as to a portion of her testimony and nowhere in the evidence was an effort made to prove her good character. While it is true there was no evidence as to her good character, Mrs. Shockley being a witness for the plaintiff, the charge, while erroneous, was not harmful to the defendants. *McCommons-Thompson-Boswell Co.* v. *White,* 33 *Ga. App.* 20 (4) (125 S. E. 76); *Geer* v. *State,* 184 *Ga.* 805 (193 S. E. 776); *Bart* v. *Scheider,* 39 *Ga. App.* 467, 470 (147 S. E. 430); *Weatherby* v. *State,* 213 *Ga.* 188, 192 (97 S. E. 2d 698).

■ Special ground 6 insists that the verdict was excessive. In *Atlantic Greyhound Corp.* v. *Austin,* 72 *Ga. App.* 289, 292 (33 S. E. 2d 718) it is said: "This court does not have as broad discretionary powers as are conferred on trial judges in setting aside verdicts as excessive. When a case comes before this court, after the refusal of a new trial by the presiding judge, it comes not only with the presumption in favor of the verdict, but also stamped with the approval of the judge who tried the case, and where no prejudice, or bias, or corrupt means in reaching the

verdict appear, we are not authorized to set it aside as being excessive." We do not feel that there was evidence of any mistake or undue bias by the jury in arriving at the damages in this case, and this ground is without merit.

*Judgment affirmed. Felton, C. J., and Nichols, J., concur.*