Sarah F. SHORTER and Asbury C.
Shorter, Plaintiffs,

v.

RETAIL CREDIT COMPANY, Defendant.

Civ. A. Nos. AC-1755, AC-1756.

United States District Court
D. South Carolina,
Columbia Division.

March 16, 1966.

Dallas D. Ball, and Luther M. Lee, Columbia, S. C., for Sarah F. Shorter and Asbury C. Shorter, Jr.

S. Augustus Black, McKay, McKay, Black & Walker, Columbia, S. C., for Retail Credit Co.

DALTON, District Judge (sitting by designation).

This is an action for invasion of privacy wherein it is alleged that on May 26, 1965, defendant's agent, Wimberly, "ignoring" "Keep Out" and "Private Drive Keep Out" signs, went to the plaintiffs' residence and obtained certain personal information from Mrs. Shorter concerning her age, the number of children in the family, Mr. Shorter's occupation and salary, whether the plaintiffs had fire and theft insurance on their house, and the age of the house. The entire conversation was conducted in a polite and courteous manner, with Mrs. Shorter standing on the screened porch of the house and Mr. Wimberly remaining outside, and the evidence shows that Mr. Wimberly made no misrepresentations in an attempt to fraudulently induce Mrs. Shorter to divulge information which she otherwise would not have given him.

Defendant's agent had told Mrs. Shorter his name before asking the above questions and upon leaving, he informed her that he worked for the Retail Credit

Corporation. Mr. Shorter was not present during any part of the conversation.

It is claimed by the defendant that the purpose of the questions was to obtain pertinent information of a routine nature for an insuring client, while plaintiffs claim that there was no legitimate motive for obtaining the information.

The plaintiffs seek damages for physical and mental suffering and extreme embarrassment which they allege resulted from the incident.

Defendant has filed a motion for summary judgment. The court will now overrule this motion, as it believes there is a genuine issue as to at least one material fact (whether the defendant had a legitimate purpose for obtaining the information from the Shorters), and proceed to decide the case on the evidence presented.

The right of privacy is a relatively recent development in the law, and the cases present no consistent pattern with respect to the substantive aspects which comprise the action. Some courts have been disposed to define the right of privacy as "the right to be left alone" and jump from there to a consideration of a particular factual situation. However, this court believes that the above definition, in and of itself, presents a totally inadequate basing point and must be further broken down before application to a specific case. For example, it is obvious that if B stops A on the street for the purpose of asking directions to the nearest bus terminal, A's right of privacy is not violated even though he has not been "left alone" in the strict sense of the word.

■ The Supreme Court of South Carolina has recognized that the right of privacy is not an absolute one, and accordingly has defined it as "[t]he unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities, in such a manner as to cause mental suffering, shame, or humiliation to a person of ordinary sensibilities." Meetze v. Associated Press, 230 S.C. 330, 95 S.E.2d 606, 608 (1956). So the "right to be left alone" might be thought of as a complex of several torts rather than just one, specifically:

(1) appropriation of the plaintiff's name or likeness (exploitation of the personality);

(2) public disclosure of a private fact;

(3) intrusion on something secret, secluded, or private pertaining to the plaintiff.

In addition to the Meetze case, supra, see also Aquino v. Bulletin Co., 190 Pa. Super. 528, 154 A.2d 422 (1959), in connection with this definition.

To the above, the author, Mr. Prosser would add a fourth category, namely that of placing the plaintiff in a false light in the public eye. Prosser, Torts § 112 (3d ed. 1964). Obviously, this has no bearing on the case at hand, as the plaintiffs have alleged no falsity or fiction with relation to any publication which may have occurred and, more basically, it is the court's opinion that they have been placed in no light whatsoever, false or otherwise, in the public eye. (1) above is likewise inapposite here, as there has been no appropriation of Mr. or Mrs. Shorter's names or likenesses.

■ Mr. Shorter asserts that he was greatly embarrassed by reason of the fact that employees in his office may have overheard his end of certain telephone conversations which he conducted with Mr. Wimberly and his superior, Mr. Sipes, in an attempt to obtain an explanation of the incident. While this might, to a very limited extent, be considered "publicity" under category (2), it was publicity which was initiated and controlled by Mr. Shorter rather than by the defendant, and, as such, the court does not believe that defendant can be held responsible for any embarrassment or humiliation which Mr. Shorter suffered solely as a result of the telephone conversations. However, even if, *arguendo*, the above facts could be considered to constitute such publicity as to bring

the defendant within the scope of category (2), the requirement remains that it be publicity of a private fact, as the South Carolina Court has held that there can be no right of privacy with respect to things which are matters of public record or which, by their very nature, cannot be kept private. Meetze v. Associated Press, supra. Therefore, any reference to Mrs. Shorter's age, the number of children plaintiffs have, the age of their home, and Mr. Shorter's occupation would not, in this court's mind, be entitled to the shield of privacy. Mrs. Shorter testified that she did not know her husband's salary, so Mr. Wimberly did not have this information, and she apparently told the investigator that there was no fire and theft insurance on the house. The last mentioned item, then, seems to be the only one upon which plaintiffs could predicate recovery under the unwarranted publicity theory, and this obviously resolves down to innocuous information. Such "publicity" as arguably might have occurred was of a very limited nature, and the court believes that neither the type of publicity nor the subject matter involved should seriously offend one of normal sensibilities.

Plaintiffs' case, then, seems to rise or fall on the theory that the defendant intruded on something secret or private pertaining to them. "The right to be left alone" describes this category of invasion of privacy more accurately than it does any of the others, and it is the most difficult aspect of the action for the courts to deal with, as there are fewer tangible factors upon which to base a decision.

A great majority of the decisions which have dealt with the right of privacy seem to involve relatively widespread publication of some private fact concerning the plaintiff. The court has been able to discover no case in South Carolina or elsewhere which is on all fours with the one at bar, as to grant a recovery for "intrusion" on these facts would virtually amount to a recognition of the "right to be left alone" in the

most literal sense of that phrase. However, since Mr. Shorter testified that he was quite embarrassed by the very fact that he was being investigated at all, a relatively close factual analogy may be drawn to the cases involving detective agencies who are frequently over zealous in their surveillance of a person. In Pinkerton Nat'l Detective Agency, Inc. v. Stevens, 108 Ga.App. 159, 132 S.E.2d 119 (1963), the defendant's agents "tailed" the plaintiff in such a manner as to frighten her and give neighbors the impression that she had done something wrong. The entire course of the conduct complained of amounted to extreme, continued, and open harassment, and recovery was granted.

The plaintiffs likewise prevailed in Souder v. Pendleton Detectives, Inc., 88 So. 2d 716 (La.App.1956), where an insurance company vexed them with constant surveillance, and, even more important, probably violated a Louisiana "Peeping Tom" statute by trespassing on the plaintiffs' property and peering into their windows. The Court recognized that the right of privacy must be weighed against the right of an insurance company to reasonably investigate a case, but decided that the defendants had gone too far in this situation. Both cases point up the well recognized proposition that the acts complained of must be so gross and out of line as to offend one of ordinary sensibilities.

In the instant case we find absolutely none of the abuses present in the above two situations; there has been no public surveillance of Mr. or Mrs. Shorter, no publication of the fact that any investigation was taking place, and no constant harassment of plaintiffs or continued trespass on their property. Here we have only a single inquiry, politely conducted and quite limited in scope.

An interesting case from Connecticut is Urban v. Hartford Gas Co., 139 Conn. 301, 93 A.2d 292 (1952), in which employees of the defendant entered plaintiff's home to remove a water heater, erroneously believing that plaintiff was

behind in installments. This caused hysteria and prolonged plaintiff's illness. Though the court found that the seller knew or should have known that the buyer was not in default, it decided that even if the right of privacy existed in Connecticut, the facts of the case would not sustain such an action. The Urban case certainly presents a stronger argument for recovery than is present here.

When a plaintiff bases an action for invasion of privacy on "intrusion" alone, bringing forth no evidence of publication on the part of the defendant, it is incumbent upon him to show a blatant and shocking disregard of his rights by the defendant, and serious mental or physical injury or humiliation to himself resulting therefrom. As has been constantly pointed out, the conduct must outrage one of ordinary sensibilities and the hypersensitive person may not recover for actions which are merely rude or inconsiderate. The court believes that the plaintiffs in this case have failed to bring forth evidence which would justify a recovery. It may well be that Mr. Wimberly could have found a "better" way in which to accomplish his task, but by Mrs. Shorter's own testimony, there was neither rudeness nor coercion during the entire conversation. In addition, there was no fraud or deception practiced on her which might lay the ground work for some sort of analogy to a "constructive" illegal search and seizure. From all the evidence before the court, it would seem that if Mrs. Shorter had refused to answer any questions and requested Mr. Wimberly to leave, that request would have been complied with.

In the Meetze case, supra, the South Carolina court noted that the qualified "right to be left alone" must be weighed against the conflicting interests of the other party involved. Of course, if there is no legitimate interest on the other side, there is nothing with which to balance the right of privacy, but the court believes that Mr. Wimberly and the defendant were acting in good faith towards a legitimate goal, and not for the sole purpose of harassing the plaintiffs.

While the court is certain that Mr. and Mrs. Shorter are sincere in their allegation of distress and embarrassment resulting from Mr. Wimberly's visit, it must hold that his conduct was not such as to outrage, humiliate, or cause physical and mental suffering to persons of ordinary sensibilities. As has been pointed out, very little information was obtained, and most of that was a matter of public record. Mr. Shorter testified that his job had required him in the past to gather information which had been responsible for sending many individuals to the penitentiary and even the electric chair, and he feared that vengeful relatives or friends of these people might take out their wrath on him or his family. However, since Mrs. Shorter testified that she had talked with Mr. Wimberly about a month before, and had given him information concerning a neighbor of hers in connection with another insurance investigation he was making, it is not reasonable to believe that this fear was present here.

In short, the plaintiffs were not "left alone" in the literal sense but, as has been shown, they do not have this right, and their qualified right, which the law protects, was not violated.

An order will be entered in accordance with this opinion.