### 51036. HINES v. COLUMBUS BANK & TRUST COMPANY et al.

CLARK, Judge.

Should we extend the "right of privacy doctrine" to create a cause of action on the basis of a single inquiry letter by a bank addressed to an American Embassy in a foreign nation requesting business information concerning a United States citizen located in that country? Law, logic, and the practicalities of modern commerce require a negative answer.

Plaintiff Hines sued the Columbus Bank & Trust Company and its employee upon a letter written in behalf of the bank to the American Ambassador at Costa Rica. The complaint stated that "Plaintiff was not a customer of the defendant bank, owed no money to either defendant and had no business with either defendant." (R. 48). Apparently the letter was written as a service by the bank to one of its customers. The queries submitted were: "a. Has Mr. James T. Hines applied for or has he obtained Costa Rica citizenship? b. Confirm that Mr. Hines is general manager of Taylor and Associates of Costa Rica, Inc., and his approximate annual salary. c. Amount of stock that Mr. Hines owns in this corporation and approximate value. d. His connection with and interest in other business enterprise in Costa Rica. e. If Educators Investment Association of Georgia, Inc. owned or owns any interest in Taylor and Associates of Costa Rica, Inc. f. Whether or not Taylor and Associates of Costa Rica,

Inc. is a Costa Rica or Panamanian corporation." (R. 6-7).

The trial court sustained motions to dismiss by defendants. This appeal is from that judgment.

Recognition of a legally enforceable right of privacy occurred for the first time in American courts in 1905. Georgia lawyers take pride in the fact that this court-created right[1] was the result of a brilliant opinion by Justice Andrew J. Cobb in *Pavesich v. New England Life Ins. Co.,* 122 Ga. 190 (50 SE 68). The dimensions of that precious right have since been delineated in many decisions. These subsequent cases up to 1966 were collected and discussed in *Cabaniss v. Hipsley,* 114 Ga. App. 367, 370 (151 SE2d 496). There Judge Eberhardt adopted the so-called "Four Tort Rule" which had been suggested by Dean Prosser in his article entitled "Privacy" appearing in 48 Calif. L. Rev. 383 (1960). Judge Eberhardt reviewed the various right of privacy cases under the heading of each of the four categories which were described briefly as: "(1) intrusion upon the plaintiff's seclusion or solitude, or into his private affairs; (2) public disclosure of embarrassing private facts about the plaintiff; (3) publicity which places the plaintiff in a false light in the public eye; (4) appropriation, for the defendant's advantage, of the plaintiff's name or likeness."

The only category relevant to the instant case is the first classification, namely, that of intrusion into private affairs. A study of the nine cases cited on page 371 by Judge Eberhardt leads to the conclusion that under this theory "the Georgia cases require that the intrusion must be physical, analogous to a trespass." Peacock v. Retail Credit Co., 302 FSupp. 418, 422 (N. D. Ga. 1969).

Appellant seeks to extend the right of privacy beyond its present limitations. Since we are dealing with a

---

[1]For legislative developments see "Privacy and the Business Community" by Wright H. Andrews in Oct. 1975 issue of Ga. S. B. J. which explains Congressional proposals seeking to "extend federal control over the information practices of private businesses and state and local governments." 12 Ga. S. B. J. 92.

judge-made tort it is necessary for us to decide if the facts of the case at bar warrant such extension. In making our decision we balance the precious "right-to-be-let-alone" which is desired by everyone as against the necessities of commerce. When put on the scales it is apparent that the courts should not interfere with the established business practice whereby inquiries are made to get information concerning activities, reputation, and financial responsibility—provided it is sought legitimately and not for a malevolent purpose. Everyone in our work-a-day world recognizes the importance to commerce of this kind of information.

Georgia's appellate courts have recognized the need for pragmatism in deciding the extent to which the right of privacy should be protected. Thus, in *Gouldman-Taber Pontiac, Inc. v. Zerbst,* 213 Ga. 682 (100 SE2d 881), where the Supreme Court ruled there was no infringement of privacy in the writing of a letter by a creditor to the debtor's employer asking assistance in collecting a debt, the court said (p. 684), "The right of privacy is not absolute, but is qualified by the rights of others. 'No individual can live in an ivory tower and at the same time participate in society and expect complete non-interference from other members of the public.' " Similarly, in *Davis v. General Finance &c. Corp.,* 80 Ga. App. 708 (57 SE2d 225), when holding that a dunning telegram on a debt that was not owed did not state a cause of action for breach of the right of privacy, our court said: "This right to sue for a violation of the right of privacy is one of recent origin and has been very much restricted from the beginning. Brandeis and Warren, in their article in the Harvard Law Review, supra, stated that 'it is only the flagrant breaches of decency and propriety that could in practice be reached.' They also recognized that it was often difficult to determine where the individual's liberty ended and the rights of society began." P. 710. Our court then added: "There is still another reason (and there may be more), and that is that the protection afforded by the law to the right of privacy must be restricted to 'ordinary sensibilities' and not to super-sensitiveness or agoraphobia. 41 Am. Jur. § 12, p. 934-5. There are some shocks, inconveniences and annoyances which members

of society in the nature of things must absorb without the right of redress." P. 711.

Since the defendant bank's letter to the Embassy indicates interest in obtaining the desired information relative to a pending United States District Court case, we deem it appropriate to quote from the most recent case on this subject: "Reasonable surveillance is recognized as a common method to obtain evidence to defend a lawsuit. It is only when such is conducted in a vicious or malicious manner not reasonably limited and designed to obtain information needed for the defense of a lawsuit or deliberately calculated to frighten or torment the plaintiff, that the courts will not countenance it." *Ellenberg v. Pinkerton's Inc.,* 130 Ga. App. 254, 257 (202 SE2d 701).

An examination of the six questions propounded in the letter does not reveal any evil motive. With the exception of the first question seeking to know if the plaintiff had applied for or obtained citizenship in Costa Rica the other questions deal specifically with normal business inquiries. Questions concerning job, salary, and business connections convey no sinister implication; nor do they by inference or innuendo reflect unfavorably upon the plaintiff.

The single letter of business inquiry by the bank to an official did not constitute an unwarranted or unreasonable interference with the plaintiff's right of privacy.

In view of this ruling it is unnecessary for us to consider whether it is the duty of the plaintiff to plead and prove the law of Costa Rica.

*Judgment affirmed. Bell, C. J., Deen, P. J., Stolz, Webb and Marshall, JJ., concur. Pannell, P. J., Quillian and Evans, JJ., dissent. Evans, J., dissents with supplemental opinion.*

Argued September 3, 1975 — Decided January 16, 1976.

*Henry L. Crisp, James C. Gatewood,* for appellant.
*Hatcher, Stubbs, Land, Hollis & Rothschild, Albert W. Stubbs, Page, Scrantom, Harris, McGlamry &*

*Chapman, W. M. Page,* for appellees.

QUILLIAN, Judge, dissenting.

The facts of this case, succinctly stated, are as follows.

Plaintiff brought suit in Muscogee Superior Court for invasion of privacy. The complaint alleged: that the defendants invaded his privacy by the preparation and dispatch of a certain letter by defendant Hamner, as agent of the defendant Columbus Bank & Trust Company, to the U. S. Embassy in San Jose, Costa Rica, inquiring into the private affairs of plaintiff to which defendants had no right nor valid interest. It was then alleged that this letter was received and acted upon by those associated with the Embassy; that "as a result of said letter and inquiries by defendants, plaintiff was subjected to embarrassing questions from his business associates and superiors and his job was and is jeopardized"; that as a result plaintiff suffered great embarrassment, fright and mental anguish and fear of harm. The complaint further alleged "that the activities described herein on the part of the defendants constituted an invasion of plaintiff's privacy which was unlawful, intentional, malicious, in bad faith and without good cause or reason and which disturbed and injured the peace, happiness and feelings of plaintiff"; that "at all times mentioned herein plaintiff was not a customer of the defendant Bank, owed no money to either defendant and had no business with either defendant." Plaintiff alleged general damages in the amount of Ten Thousand Dollars and One Hundred Thousand Dollars punitive damages, and prayed for judgment jointly and severally therefor.

The defendants in separate answers denied the material allegations of the complaint and by motion set forth six grounds to dismiss the complaint. The defendants then sought a judgment on the pleadings. After a hearing on the motion to dismiss, the trial judge dismissed the plaintiff's complaint with prejudice as to each defendant. Appeal was taken from these judgments.

The majority opinion states that the question here is "should we extend the right of privacy to create a cause of action on the basis of a single inquiry letter addressed to an American Embassy in a foreign nation requesting

business information concerning a United States citizen located in that country?"

I do not construe the issue so narrowly. Instead the question to me is whether the "averments in the complaint disclose with certainty that the plaintiff would not be entitled to relief under any state of facts which could be proved in support of his claim." *Harper v. DeFreitas,* 117 Ga. App. 236, 238 (160 SE2d 260). The majority appears to require the plaintiff to set forth a "cause of action" in the complaint.

First of all there is a question as to which substantive law controls, that of Georgia or that of Costa Rica. The parties, through their argument, both seem to concede that Costa Rican law is the one that should be applied. Since the alleged tortious acts occurred in Costa Rica, I too see no basis to apply Georgia law. However, in view of the majority's addressing itself to that point, let us consider the salient features of our state law.

1. If Georgia law were applied, the complaint and pleadings filed failed to disclose that the plaintiff could not recover. The complaint alleged "plaintiff was not a customer of the defendant Bank, owed no money to either defendant and had no business with either defendant." Hence, there was nothing to establish as a matter of law that the plaintiff waived his right to privacy. Compare: *Pinkerton &c. Agency v. Stevens,* 108 Ga. App. 159 (132 SE2d 119); *Gouldman-Taber Pontiac, Inc. v. Zerbst,* 213 Ga. 682 (100 SE2d 881).

The right to privacy is defined as ". . . the right of an individual to be let alone, or to live a life of seclusion, or to be free from unwarranted publicity, or to live without unwarranted interference by the public about matters with which the public is not necessarily concerned, or to be protected from any wrongful intrusion into an individual's private life which would outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities." 77 CJS 396, Right of Privacy, § 1. See *Pavesich v. New England Life Ins. Co.,* 122 Ga. 190 (50 SE 68); *Goodyear Tire &c. Co. v. Vandergriff,* 52 Ga. App. 662, 665 (184 SE 452); *McDaniel v. Atlanta Coca Cola Bottling Co.,* 60 Ga. App. 92, 99 (2 SE2d 810); *Pinkerton &c. Agency v. Stevens,* 108 Ga. App. 159, 166, supra. Since

the defendants requested information about the plaintiff they may not escape responsibility for the manner in which it was obtained or the harm thereby caused by delegating to another the job of obtaining such information. *Ellenberg v. Pinkerton's Inc.*, 125 Ga. App. 648 (188 SE2d 911). Whether or not the questions were innocuous per se is not dispositive since we do not know what transpired in seeking and obtaining answers thereto. Most clearly there is nothing in the complaint to show that the defendants had any reason whatsoever to make inquiries regarding the plaintiff.

Therefore even if Georgia law were applied, the plaintiff would not be precluded from recovery.

2. Positing that substantive Costa Rican law controls, we reach the crucial issue concerning the duty of the plaintiff to plead and prove the law of a foreign jurisdiction.

Here the plaintiff did not set forth Costa Rican law under which he contended he could recover. However, in my view, that is in no way fatal to his case.

Section 43 of the Civil Practice Act (Code Ann. § 81A-143; Ga. L. 1966, pp. 609, 654; 1968, pp. 1104, 1108) requires that a party must give notice of a foreign law in the pleadings or other reasonable written notice. There is no basis for dismissing a complaint because a foreign law is not pleaded. *Atlanta Newspapers v. Shaw*, 123 Ga. App. 848, 851 (182 SE2d 683). See Old Hickory Products Co. v. Hickory Specialties, Inc., 366 FSupp. 913, 917. The issue is premature prior to an evidentiary stage.

If the foreign law is controlling, there is nothing to show that the plaintiff would be precluded from recovering. Testing the complaint under the applicable rules of the Civil Practice Act, we can not make assumptions as to what Costa Rican law might provide. Notice pleading now holds sway and the issues here are not ripe for final judicial determination. Unless the court is certain that the plaintiff could not recover under any state of facts that might be adduced in support of the claim, a motion to dismiss for failure to state a claim should be denied.

It is clear that a dismissal of the complaint was erroneous and premature and for that reason I

respectfully dissent from the judgment of my colleagues.

I am authorized to state that Presiding Judge Pannell and Judge Evans concur in this dissent.

EVANS, Judge, dissenting.

I concur in Judge Quillian's dissent and note that the majority, in opposing his position, keep referring to the conduct of defendant as being the writing *"of a single letter."* Is there anything that suggests that more than one letter or *more than one inquiry* is required in order to invade privacy? I know of none.

It is also noted that the opposition cites certain earlier decisions, but surely they are overlooking the recent decision by the Supreme Court of Georgia, speaking through Justice Hill in the case of *Hall v. Hopper,* 234 Ga. 625 (216 SE2d 839), written on the 2nd day of June, 1975, which makes it plain that stare decisis (relying on earlier cases as precedents) is nothing more than argument and is no longer controlling. The exact language of that decision at page 631 being as follows: "Stability and certainty in law are desirable; stare decisis is a valid and compelling basis of argument. *Cobb v. State,* 187 Ga. 448, 452 (200 SE 796). It is not possible, however, to achieve unanimity in every case which reaches this court. When a majority of this court determines that stability must give way to justice to the prisoner, then justice prevails. The 'full bench rule' has been repealed."

"That repeal occurred some time ago. The effective date of repeal is immaterial. The bench and bar are entitled to notice of its repeal, and we thank the court below for bringing this matter to our attention."

Under that decision we simply look to the justice of this case, unhampered and unaffected by precedents or earlier decisions.