197 N.J. Super. 249 (1984)
484 A.2d 729
N.O.C., INC., T/A NOBLE OIL COMPANY, A NEW JERSEY CORPORATION AND CHRISTOPHER GRUNGO, PLAINTIFFS,
v.
PATRICIA SCHAEFER, DEFENDANT.
Superior Court of New Jersey, Law Division Burlington County.
Decided May 14, 1984.
*251 John B. Prior, Jr. for plaintiffs (Greenberg, Kelley & Prior, attorneys).
Thomas Norman for defendant.
HAINES, A.J.S.C.
N.O.C., Inc., t/a Noble Oil Company, and Christopher Grungo, its president, have sued Patricia Schaefer for an invasion of privacy. Noble and Schaefer are adjoining property owners. Noble operates a fuel oil and waste oil transfer, treatment and storage facility on its property in Tabernacle Township, New Jersey. It is subject to regulation as a hazardous waste facility. Its property is surrounded by an eight-foot high stockade fence.
Since early 1980, defendant has kept the activities on Noble's property under intensive scrutiny. During the first year of this activity, she climbed a ladder propped against a tree near Noble's property line so that she could observe Noble's activities. In 1982 she constructed a "tree fort" in the backyard for her children's use but also for the purpose of better observing Noble's activities. She has used binoculars, a camera and occasionally a telescope to observe them. She has kept a detailed diary and file on Noble which set forth accounts of *252 vehicles and the movement of machinery within the facility as well as the nature of the work performed therein. She has recorded conversations involving Noble's employees which she could overhear while making her observations. Plaintiffs claim that these activities constitute a deliberate and harassing intrusion upon their right to privacy.
Patricia Schaefer does not deny the existence or extent of her activities. She insists, however, that they are justified. She believes that Noble has constructed a fence, a platform and underground tanks which violate the local zoning ordinance. She is also concerned about oil spills on the property which might seep through the ground and invade her lands, including her well. She has been annoyed by large trucks parking in the street during early morning hours. She reported her concerns to the township committee at a public meeting in May 1980 and was advised by the mayor, Frank Grungo, that she had no proof to support her claims. She understood him to suggest that she was lying. It was then that she decided to maintain records of plaintiffs' activities. She has reported her concerns to the Department of Environmental Protection, the Burlington County Board of Health and the Division of Water Resources of the Department of Environmental Protection. In August 1982 she obtained a copy of a report from the Burlington County Health Department, addressed to the New Jersey Department of Environmental Protection. It concerned the registration of Noble as a hazardous waste facility and noted the installation of two 15,000-gallon underground tanks in addition to its six existing tanks while setting forth the possibility of ground pollution from oil spills. In December 1982 defendant learned that Noble was fined $40,000 for violation of the Federal Toxic Substance Control Act. She has seen no reason to discontinue her activities since her complaints have produced no satisfactory action.
Noble now moves for a summary judgment establishing the liability of defendant. The essential facts, set forth above, are *253 not in dispute. This opinion, holding there is no liability, addresses the motion.

A. THE CORPORATE ACTION FOR INVASION OF PRIVACY.
3 Restatement, Torts 2d, § 6521 (1981) states:
Except for the appropriation of one's name or likeness, an action for invasion of privacy can be maintained only by a living individual where privacy is invaded.
Comment (c) to the Restatement further indicates that:
A corporation, partnership or unincorporated association has no personal right of privacy. It has therefore no cause of action for any of the four forms of invasion (of privacy, including intrusion upon seclusion)
The New Jersey courts have not addressed the question of whether a corporation has a cause of action for invasion of privacy. However, the Restatement position is reasonable and convincing. The tort of invasion of privacy focuses on the humiliation and intimate personal distress suffered by an individual as a result of intrusive behavior. While a corporation may have its reputation or business damaged as a result of intrusive activity, it is not capable of emotional suffering. There is no claim of reputation or business damage in this action; if there were, it would not be recoverable on a theory of invasion of privacy. I conclude that the defendant cannot be liable to the corporation in this action.

B. INDIVIDUAL ACTION FOR INVASION OF PRIVACY.
Christopher Grungo, President of Noble Oil Company, Inc., sues as an individual and consequently does not face the corporate exclusion noted above. It is, therefore, necessary to examine the rules of law which apply to his claim of invasion of privacy.

(1) Right to Privacy in New Jersey
The New Jersey Courts have recognized a cause of action for an invasion of privacy in a number of cases. The earlier decisions based their relief upon the theory that property or contract rights were involved. See, e.g., Vanderbilt v. Mitchell, 72 N.J. Eq. 910 (E. & A. 1907); Edison v. Edison Polyform and Manufacturing Co., 73 N.J. Eq. 136 (Ch. 1907); Blex v. Smith, 194 N.J. Eq. 386 (Ch. 1929). The later cases recognized the right of privacy as an independent right and not merely incident to other long recognized rights such as property or *254 contract. McGovern v. Van Riper, 137 N.J. Eq. 24 (Ch. 1945), aff'd 137 N.J. Eq. 548 (E. & A. 1946); Frey v. Dixon, 141 N.J. Eq. 481 (Ch. 1948); Ettore v. Philco Television Broadcasting Corp., 229 F.2d 481 (3 Cir.1956). The modern cases have recognized that the right to privacy is not one tort, but rather, a complex of four, namely, (1) intrusion upon solitude or seclusion (2) public disclosure of private facts, e.g., unreasonable publicity given to one's private life (3) false light privacy, e.g., publicity that normally places the other in a false light before the public; (4) appropriation of name or likeness. 3 Restatement, Torts 2d, § 652A, at 376 (1977). See Palmer v. Schonhorn Enterprises, Inc., 96 N.J. Super. 72 (Ch.Div. 1967) (appropriation of name or likeness); Canessa v. Kislak, Inc., 97 N.J. Super. 327 (Law Div. 1967) (appropriation of name or likeness); Weller v. Home News Publishing Co., 112 N.J. Super. 502 (Law Div. 1970) (false light privacy); Devlin v. Greiner, 147 N.J. Super. 446 (Law Div. 1977) (false light privacy); Cibenko v. Worth Publishers, Inc., 510 F. Supp. 761 (D.N.J. 1981) (false light privacy); Bisbee v. John C. Conover Agency, 186 N.J. Super. 335 (App. Div. 1982) (intrusion, false light privacy, public disclosure of private facts, appropriation of name or likeness).
Plaintiff's complaint essentially alleges an "intrusion upon seclusion." 3 Restatement, Torts 2d, § 652B (1977), provides that:
One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.
This is the New Jersey rule. In McGovern v. Van Riper, supra, the court held that the right of privacy encompasses the right to be protected from a wrongful intrusion which would outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities. 137 N.J. Eq. at 32.
Additionally, a defendant is subject to liability only when he intrudes into a private place, or has invaded a private seclusion that plaintiff has thrown about his person or affairs. 3 Restatement, Torts, supra, § 6521, comment (c). In Bisbee v. John C. Conover Agency, supra, the court stated:
The thrust of this aspect of the tort (of intrusion upon seclusion) is, in other words, that a person's private, personal affairs should not be pried into. The converse of this principle is, however, of course, that there is no wrong where defendant did not actually delve into plaintiff's concerns, or where plaintiff's activities are already public or known. [186 N.J. Super. at 340]
*255 In Bisbee the Appellate Division held that printing an article containing a photograph of the plaintiff's house as well as listing the price for which it recently sold did not violate the owner's right to privacy. The court, applying the above rule, reasoned:
It can accordingly be seen that plaintiff's first count must fail, both because reasonable men could not find any highly offensive intrusion upon the Bisbees here, and because all of the matters at issue herein were otherwise known and public. The photograph which the Press printed was taken from the street, a public thoroughfare, and merely represented a view which is available to any bystander. Most of the facts in the article are matters of public record, readily available to anyone who would wish to ascertain them.... Defendants did nothing wrongful in obtaining or compiling this information. [at 340][1]
Aside from Bisbee, the New Jersey courts have not delineated rules of liability for claims of intrusion upon seclusion. Bisbee, while helpful, provides only a partial answer to the question raised by the unique facts of the present case. It is, therefore, necessary to examine the case law in other jurisdictions in order to resolve the present issues.

C. ANALYSIS OF CASES IN OTHER JURISDICTIONS.

(1) General Principles.
There is general agreement in jurisdictions other than New Jersey that the following principles apply to a claim of intrusion upon seclusion.
1. Unlike other types of invasion of privacy, intrusion does not require as an essential element the publication of information obtained. 3 Restatement, Torts, supra, § 652B, comment (b); Fowler v. Southern Bell Telephone & Telegraph Co., 343 F.2d 150, 152 (5 Cir.1965); Birnbaum v. U.S., 436 F. Supp. 967 (E.D.N.Y. 1977); cf. Kedra v. City of Philadelphia, 454 F. Supp. 652 (D.C.Pa. 1978).
2. A cause of action may be sustained without proof of any physical contact or violation. 3 Restatement, Torts, supra, § 8652B comment (b); Pearson v. *256 Dodd, 410 F.2d 701 (D.C. Cir.1969). This rule is based upon the reasoning that the common law, like the Fourth Amendment, is intended to protect people, not places. Id. at 704; Katz v. U.S., 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Contra Pierson v. News Group Publication, 549 F. Supp. 635 (S.D.Ga. 1982)
3. The content of what an intruder learns by means of an intrusion is not necessarily controlling when fixing liability. Thus, the court in Pearson v. Dodd, supra, said:
An eavesdropper to the marital bedroom may hear marital intimacies, or he may hear statements of fact or opinions of legitimate interest to the public; for purposes of liability that should make no difference. On the other hand, where the claim is that private information concerning plaintiff has been published, the question of whether that information is genuinely private or is of public interest should not turn on the manner in which it has been obtained. [at 705]
4. Liability for an invasion of privacy occurs only when there is an intrusion upon private, intimate affairs and the intrusion is one to which an ordinary man would reasonably expect the particular defendant to be exposed. Pearson v. Dodd, supra; Shewmaker v. Minchew, 504 F. Supp. 156 (D.C. 1980); Brown v. Mullarkey, 632 S.W.2d 507 (Mo. App. 1982).

(2) The "Detective" Cases.
The "detective" cases present situations which are the most analogous to the facts before the court. In Souder v. Pendleton Detectives, 88 So.2d 716 (La. Ct. App. 1956), detectives were hired by an insurance company, to investigate, by shadowing and eavesdropping, the activities of plaintiff who had claimed workers compensation benefits. The detectives, seeking to verify the claim, used binoculars, took pictures, trespassed on plaintiff's property and watched him in his home by peeking through his windows. Plaintiff sued for harassment and privacy invasion. The court balanced plaintiff's right to privacy with the insurance company's right to investigate claims, concluding that the complaint alleged a sustainable cause of action. It was reasoned that the actions of the detectives, if accurately portrayed, might well have violated a peeping-tom statute; consequently, the actions were criminal and gave rise to a civil suit if damages were proved. Id. at 718.
In Pinkerton National Detective Agency, Inc. v. Stevens, 132 S.E.2d 119, 108 Ga. App. 159 (Ct.App. 1963), detectives again *257 were shadowing an insured who claimed to have suffered damages as the result of an automobile accident. The claimant was under constant surveillance, particularly at night. The detectives parked outside her home and peeped in her windows, cut a hole in her hedge in order to view her activities more easily, eavesdropped on conversations, moved around the house at night, came to her door disguised as television salesmen, followed her in an automobile and into stores and public places and intercepted her outside of restrooms and public restaurants. She sued the detective agency for invasion of privacy, claiming serious emotional distress eventually requiring shock treatment and resulting in a permanent disability. In addressing this claim, the court said:
This petition does not limit the Defendant's acts to that reasonable and unobtrusive observation which would ordinarily be used to catch one in normal activities unaware, but sets out a course of conduct beyond what would be sufficient for the purpose intended, and certainly one which would disturb an ordinary person without hypersensitive reactions. Both counts of both petitions set out a cause of action. [Id. at 125]
The Pennsylvania Court, in Forster v. Manchester, 410 Pa. 192, 189 A.2d 147 (Sup.Ct. 1963) reached an opposite result. It held that detectives employed by an insurance company to make an investigation did not invade the privacy of a claimant, the subject of reasonable inquiry and investigation. All surveillances by the detectives took place in the open on public thoroughfares. Pictures were taken but there was no evidence indicating that they were embarrassing or had been exposed to third parties. Consequently, the investigation was reasonable and not actionable. The case was discussed and distinguished in Pinkerton, supra, on the ground that the Pinkerton Agency did not act reasonably.
These cases recognize a balance test: social need is to be weighed against the individual's right to privacy. Outrageously unreasonable conduct is not permissible; private right outweighs the social need. A legitimate investigation, reasonably undertaken, is permissible; social need outweighs the private *258 right. This test was adopted, specifically, in Parish National Bank v. Lane, 397 So.2d 1282 (La.Ct. 1981). In that case the bank, a judgment creditor, moved for a court order to inspect, view and photograph a judgment debtor's property in order to determine whether it had any value worth seizing. The property was not visable from the public road and was surrounded by woods. Defendant would not permit the bank to enter the property, claiming that it would be an unreasonable invasion of privacy. The court held that the bank's substantial interest in appraising the property outweighed defendant's privacy rights. The inspection was permitted. The court said:
In dealing with invasion of privacy allegations, courts have had to distinguish between actionable and nonactionable invasions. Generally, an actionable invasion of privacy exists only when the defendant's conduct is unreasonable and seriously interferes with the plaintiff's privacy interest. The reasonableness of the defendant's conduct is assessed by balancing his interest in pursuing his course of conduct against the plaintiff's interest in protecting his privacy. Where a defendant's action is properly authorized or justified by circumstance, it may be found reasonable and nonactionable even though it amounts to a slight invasion of the plaintiff's privacy. [Id. at 1286; citations omitted]
These decisions, applied to the instant facts, require the competing interests of Schaefer and Grungo to be balanced. Schaefer was concerned about oil seepage, hazardous waste violations and the disregard of zoning regulations, in all of which, as a resident and neighboring property owner, she had a legitimate interest. Most of the activities she observed were those of the corporate plaintiff, Noble. Grungo's comings and goings were not significantly affected by her surveillance. Even if he participated in all of the corporate undertakings, it cannot be said that the invasion of his privacy was severe. His privacy interests are clearly outweighed by the social and private interests pursued by Schaefer through means which are reasonable.
These conclusions are buttressed by the fact that Schaefer is an adjoining landowner. Basic property principles applying to such landowners support her surveillance.

*259 D. ADJOINING LANDOWNERS.
It is a primary concept of the common law that a landowner should so use his own property as not to infringe upon the legal rights of others. Brownsey v. General Printing Ink Corporation, 118 N.J.L. 505 (Sup.Ct. 1937). Thus, in Ettl v. The Land and Loan Co., 122 N.J.L. 401, 403 (Sup.Ct. 1939), the court cited with approval the rule of law stated in 2 C.J.S., Adjoining Landowners, § 1, that "A landowner must so use his property as not to injure the legal rights of neighbors ... and must refrain from active, wrongful, negligent, or unskillful acts causing unnecessary injury to adjoining premises." New Jersey has expanded this rule to hold landowners strictly liable for harm caused by toxic wastes that are stored and which flow into the property of others. State Dept. of Environmental Protection v. Ventron Corp., 94 N.J. 473 (1983). However, New Jersey also recognizes the general principle that an adjoining landowner is entitled to the "reasonable use" of his or her property. Gellenthin v. J. & D. Inc., 38 N.J. 341, 352 (1962). Phrased differently, the right to deal with one's property as the owner chooses, so long as the use harms nobody, is a natural right, guaranteed by the state and federal constitutions. Reimer v. Dallas, 129 A. 390 (N.J.Sup.Ct. 1929). Thus, the court in Blumberg v. Weiss, 129 N.J. Eq. 34, 40 (E. & A. 1941), noted:
Ordinarily, landowners have an equal right under the law to build to the line of their respective tracts. In so doing, they are merely exercising a legal right, and, by the same token, there is no infringement of the rights of the adjoining owner.
This principle is carried further in 1 Am.Jur.2d, Adjoining Landowners, § 19, which states:
A landowner cannot be restrained from erecting a structure for the express purpose of overlooking the adjoining land, although the reason for the erection of such structure is to observe exhibitions on such adjoining premises. [citing Detroit Baseball Club v. Deppert, 61 Mich. 63, 27 N.W. 856 (Sup.Ct. 1886)]
The general rule is also set forth in 2 C.J.S., Adjoining Landowners, § 70:

*260 A landowner cannot assert by action a right of privacy from overlooking doors or windows in the absence of a statute, contract or grant protecting him.
In the absence of statute, or of a contract or grant otherwise, a landowner has a right to place doors, windows, or openings overlooking adjoining land, and the adjoining owner has no action for an interference with his privacy, his only remedy being to build on his own land so as to obstruct the view.
Applying these principles, the court in Detroit Baseball Club, supra, refused to enjoin a property owner from erecting and using a platform overlooking a baseball ground to which an admission fee was charged when games were in progress. The court reasoned that "courts cannot limit the extent, up or down, to which a man may enjoy his property; and if he goes higher than his neighbor so long as he does not interfere with the rights of others, or injure his neighbor, he subjects himself to no liability." 27 N.W. at 858; see also Haverstick v. Sipe, 33 Pa. 368 (Sup.Ct. 1859), which adopted the rule set forth in 2 C.J.S., supra, § 80.
Schaefer's activities fall squarely within these holdings. They are a further denial of Grungo's action for invasion of privacy.

CONCLUSIONS
Defendant's surveillance resulted from her legitimate concerns about alleged zoning violations, the improper operation of a hazardous waste facility and the seepage of oil into her property. The copious notes she made and the many photographs she took were never exhibited in public. The corporate plaintiff, because it is a corporation, has no action for invasion of privacy. The individual plaintiff did not suffer any outrageous invasion of his personal, intimate affairs which would shock the sensibilities of a reasonable man. On balance, the interests of defendant in protecting herself, her property and her community against activities which she believed, with reason, violated the law, outweighed plaintiff's interest in preserving his privacy. Under the circumstances there is no liability on the part of defendant and plaintiff's suit must be dismissed.
NOTES
[1] Bisbee supports the proposition that whatever the public may see from a public place cannot be private. Here, defendant's observations were made from a vantage point which she constructed and it is doubtful that a "public view" exception to any privacy right is sustainable. The issue need not be, and is not, addressed.