231 N.J. Super. 251 (1989)
555 A.2d 663
BARBARA FIGURED, WILLIAM FIGURED AND JASON FIGURED, PLAINTIFFS-APPELLANTS AND CROSS-RESPONDENTS,
v.
PARALEGAL TECHNICAL SERVICES, INC., RONAL F. AUSTIN AND RONALD E. FREEMAS, DEFENDANTS-RESPONDENTS AND CROSS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued January 18, 1989.
Decided February 23, 1989.
*252 Before Judges PRESSLER, SCALERA and STERN.
Daniel J. Yablonsky argued the cause for appellants (Courter, Kobert, Laufer, Purcell and Pease, attorneys, Robert A. Smith on the brief).
Richard D. Millet argued the cause for respondents (Hampson & Millet, attorneys, Richard D. Millet and Kathleen Suleiman, on the brief).
The opinion of the court was delivered by STERN, J.A.D.
Plaintiff commenced this action against two investigators and the corporation which employed them.[1] The complaint alleged, among other things, that defendants' surveillance of her activities invaded her privacy and caused her severe emotional distress. Plaintiff sought damages for invasion of privacy and *253 both negligent and intentional infliction of emotional distress. A judge of the Law Division concluded that, based on the undisputed facts and all reasonable inferences derived therefrom, no cause of action had been established and granted defendants' motion for summary judgment. We now affirm the judgment of the Law Division.[2]

I.
Plaintiff was in an automobile accident on January 23, 1983 as a result of which she claimed to have suffered physical, emotional and psychological injuries. The liability carrier for the other vehicle involved in the accident retained defendant Paralegal Technical Services, Inc. to investigate plaintiff's injury claims and Paralegal assigned the investigation to the individual defendants, their employees.
Plaintiff complains in particular about two separate incidents which occurred during defendants' surveillance. The first occurred on the morning of June 6, 1984. Plaintiff received a telephone call from a neighbor who said that she had noticed two suspicious-looking vehicles going up and down the road in front of plaintiff's home. Later, when plaintiff left her home with her mother to keep a doctor's appointment, she noticed two cars parked in a wooded area near the road and saw two men standing alongside the road, watching her as she left. As plaintiff drove to her appointment, she noticed that both cars were following her. Eventually, plaintiff pulled into the parking lot of a store about five miles from her home and noticed that the two cars had followed her into the parking lot. The driver of one car parked in the back of the store and then walked around the front of plaintiff's car, looking "straight into [her] face" while "within arms reach" of her. He "kept peering" *254 at plaintiff and walked very slowly, "staring" as he passed, but said nothing to her.
The second incident occurred on September 11, 1985. Plaintiff left a family birthday party in Scranton, Pennsylvania, and drove onto Route 380, when she noticed that one of the same vehicles involved in the June 6, 1984 incident was again following her. The vehicle proceeded to follow plaintiff closely for over forty miles until she pulled into a rest area. After plaintiff stopped, she noticed that the other vehicle had "pulled around" and parked facing her.
The motion judge granted summary judgment in favor of defendants on the issue of negligent infliction of emotional distress because he found that there was no breach of duty, apparently on the ground that any harm to plaintiff was unforeseeable. He also granted summary judgment in favor of defendants on the issue of intentional infliction of emotional distress, finding that defendants' conduct did not rise to the required level of outrageousness. Finally, the judge granted summary judgment in favor of defendants on the issue of invasion of privacy, because he found that, viewing the facts in the light most favorable to plaintiff, the cause of action was not established.

II.
Our Supreme Court recently considered the proofs necessary to sustain a claim for negligent or intentional infliction of emotional distress in the absence of physical injury. In Buckley v. Trenton Savings Fund Society, 111 N.J. 355 (1988) the Court first considered "negligent infliction of emotional distress" and the development of case law thereunder, indicating that recovery seemed to be permitted, even in the absence of physical injury to the plaintiff, under circumstances where there was a "sufficient guarantee" of the "genuineness" of the claim and the emotional distress was sufficiently "severe," such as involving actual observation of severe injury or death to a loved one. 111 N.J. at 365. See also Giardina v. Bennett, 111 *255 N.J. 412, 418-20 (1988); Strachan v. John F. Kennedy Memorial Hospital, 109 N.J. 523, 533-38 (1988). The Buckley Court then discussed "intentional infliction of emotional distress" and the developing case law thereunder, stating that "[g]enerally speaking, to establish a claim for intentional infliction of emotional distress, the plaintiff must establish intentional and outrageous conduct by the defendant, proximate cause and distress that is severe." 111 N.J. at 366. See also Restatement, Second, Torts (1965), § 46 (Restatement). The Court determined that
[i]nitially, the plaintiff must prove that the defendant acted intentionally or recklessly. For an intentional act to result in liability, the defendant must intend both to do the act and to produce emotional distress. Liability will also attach when the defendant acts recklessly in deliberate disregard of a high degree of probability that emotional distress will follow....
Second, the defendant's conduct must be extreme and outrageous.... The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." ... Third, the defendant's action must have been the proximate cause of the plaintiff's emotional distress ... Fourth, the emotional distress suffered by the plaintiff must be "so severe that no reasonable man could be expected to endure it." [111 N.J. at 366. (citations omitted)].
With respect to both negligent and intentional infliction of emotional distress, therefore, the Buckley Court concluded that
[t]he severity of the emotional distress raises questions of both law and fact. Thus, the court decides whether as a matter of law such emotional distress can be found, and the jury decides whether it has in fact been proven.... When conduct is directed at a third party, proof of bodily harm is required, ... but when the intentional conduct is directed at the plaintiff, he or she need not prove any physical injury.... It suffices that the conduct produce emotional distress that is severe. [Id. at 367 (citations omitted)].
We conclude that the Law Division judge did not err in determining that there was insufficient evidence as a matter of law to present the emotional distress claims to a jury.
There was insufficient proof of severity of emotional distress, whether negligently or intentionally inflicted, to support a valid cause of action. Cf. Strachan, supra, 109 N.J. at 534. See also Giardina, supra, 111 N.J. at 419-420. Whether an insurance investigation following a claim may be deemed "one of the regrettable aggravations of living in today's society", Buckley, *256 supra, 111 N.J. at 368 here the evidence was "insufficient as a matter of law to support a finding that the mental distress was so severe that no reasonable man could be expected to endure it," ibid.

III.
We are also satisfied that the facts, viewed in a manner most favorable to plaintiff, do not give rise to a cause of action for invasion of privacy.
... "The law of privacy comprises four distinct kinds of invasion of four different interests of the plaintiff, which are tied by the common name, but otherwise have almost nothing in common ...":
(i) commercial appropriation of one's name or likeness, (ii) intrusion, (iii) public disclosure of private facts and (iv) publicity which places the plaintiff in a false light in the public eye. [Galella v. Onassis, 353 F. Supp. 196, 229, (S.D.N.Y. 1972), aff'd in part and rev'd in part 487 F.2d 986 (2d Cir.1973), quoting from W. Prosser, Law of Torts ¶ 117 at 804-12 (4th ed. 1971).]
See also Restatement, Second, Torts (1977), § 652A; Bisbee v. John C. Conover Agency, 186 N.J. Super. 335, 339 (App.Div. 1982).
This case concerns a claim for "unreasonable intrusion upon seclusion of another." See Restatement, § 652A. According to the Restatement,
[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person. [Restatement, § 652B.]
According to the comments to this section, a defendant is subject to liability
... only when he has intruded into a private place, or has otherwise invaded a private seclusion that the plaintiff has thrown about his person or affairs.... [There is no] liability for observing [the plaintiff] or even taking his photograph while he is walking on the public highway, since he is not then in seclusion, and his appearance is public and open to the public eye.
...
There is likewise no liability unless the interference with the plaintiff's seclusion is a substantial one, of a kind that would be highly offensive to the ordinary reasonable man, as the result of conduct which the reasonable man would strongly object. [Restatement, supra, § 652B, comments c and d].
It may well be that "freedom from extensive shadowing and observation has come to be protected in most ... jurisdictions", *257 Galella, supra, 353 F. Supp. at 229, and that "overzealous" shadowing and monitoring may, therefore, be actionable, id. at 228. See also Galella, supra, 487 F.2d at 995-96. However, the facts of this case  even accepting plaintiff's version as true in every respect  do not warrant relief. Cf. Bisbee, supra, 186 N.J. Super. at 339-42. The allegations do not reveal an intrusion which would be "highly offensive" to a reasonable person:
The thrust of this aspect of the tort is, in other words, that a person's private, personal affairs should not be pried into.... The converse of this principle is, however, of course, that there is no wrong where defendant did not actually delve into plaintiff's concerns, or where plaintiff's activities are already public or known. [Bisbee, id. at 340 (citations omitted)].
Bisbee affirmed a grant of summary judgment in favor of defendant, denying plaintiff's claim that his seclusion was unreasonably intruded upon, because reasonable men could not find any highly offensive intrusion and because all the matters at issue were otherwise known and public. The photograph which was published in that case had been taken from the public thoroughfare and thus represented a view available to any bystander. Ibid. See also N.O.C., Inc. v. Schaefer, 197 N.J. Super. 249, 255 (Law Div. 1984). Similarly, in Forster v. Manchester, 410 Pa. 192, 189 A.2d 147 (1963), the Pennsylvania Supreme Court held that detectives employed by an insurance company to make an investigation did not invade the privacy of a claimant since their surveillance "took place in the open or public thoroughfares where [the claimant]'s activities could be observed by passers-by." 189 A.2d at 150. The Forster court concluded that the conduct of the investigation was not "unreasonable," and therefore not actionable, adding that "by making a claim for personal injuries appellant must expect reasonable inquiry and investigation to be made of her claim and to this extent her interest in privacy is circumscribed." Ibid.
Similarly, here plaintiff, in her deposition and answers to interrogatories, asserts that defendants drove past her home, and were seen to do so, on several occasions on one day; that they parked their cars about half a mile from her home and *258 stared at her as she drove past them; that they followed her on a public street to a store; and that after she parked in the store's parking lot, one defendant walked slowly around her car and stared her straight in the face. She also asserts that she was followed on Route 380 in Pennsylvania, and that when she stopped at a rest area the investigators did so as well. These allegations do not include acts which involve an unreasonable intrusion upon plaintiff's seclusion. Rather, the defendants' activities all took place in the open, either on public thoroughfares or in areas where members of the public had the right to be. As noted by Judge Haines in Schaefer, supra, "Bisbee supports the proposition that whatever the public may see from a public place cannot be private." 197 N.J. Super. at 255, n. 1.
An individual who seeks to recover damages for alleged injuries must expect that her claim will be investigated. Although the investigation must be reasonably conducted, and may not involve an intrusion into the privacy of the claimant which could be deemed highly offensive to a reasonable person, we conclude that here, even giving plaintiff the benefit of all legitimate inferences, the facts submitted in opposition to defendants' motion for summary judgment reveal no objectively unreasonable or highly offensive conduct on the part of the defendants. Accordingly, the judgment is affirmed.
NOTES
[1] A settlement was reached with other defendants named in the complaint. However, the record before us does not contain an order amending the complaint to name the individual defendants who were originally identified as John Doe and Richard Roe. The parties agree that we here deal with a final judgment as the matter has been disposed of as to all parties, and we proceed on that basis. Further, in light of the then outstanding claims which were resolved by the motion for summary judgment involved in this appeal, we treat Barbara Figured as the sole plaintiff.
[2] In light of our disposition, we bypass certain procedural questions raised on the cross-appeal related to the timeliness of the motion for reconsideration which was granted before the motion judge adhered to his original decision granting summary judgment.