21 A.3d 650 (2011)
420 N.J. Super. 353
Kenneth R. VILLANOVA, Plaintiff-Appellant,
v.
INNOVATIVE INVESTIGATIONS, INC., and Richard P. Leonard, Defendants-Respondents.
Docket No. A-0654-10T2
Superior Court of New Jersey, Appellate Division.
Argued May 2, 2011.
Decided July 7, 2011.
*651 Charles J. Sprigman, Jr., Woodbury, argued the cause for appellant.
Marc C. Pakrul argued the cause for the respondents (Tompkins, McGuire, Wachenfeld & Barry, LLP, attorneys; Mr. Pakrul and Richard F. Connors, Jr., of counsel and on the brief; John P. Marzolla, Newark, on the brief).
Before Judges LISA, SABATINO and ALVAREZ.
The opinion of the court was delivered by
LISA, P.J.A.D.
Plaintiff, Kenneth R. Villanova, appeals from an August 27, 2010 Law Division order, which granted summary judgment in favor of defendants and thus resulted in dismissal of his complaint. The order also denied plaintiff's cross-motion for summary judgment. Plaintiff's claim was for intentional or negligent invasion of his right of privacy. It stemmed from events that occurred in relation to his divorce proceedings. His wife hired defendants, Innovative Investigations, Inc., and its principal Richard P. Leonard, to investigate plaintiff's suspected infidelities. In the course of doing so, Leonard suggested to Mrs. Villanova that she place a global positioning system (GPS) device in one of the family vehicles to assist in tracking plaintiff's whereabouts. She did so. In granting summary judgment, the trial court found that, accepting the facts in the light most favorable to plaintiff, he failed to make out a prima facie case of the tort of invasion of privacy.
On appeal, plaintiff first argues that the tort of invasion of privacy exists in this State. Defendant does not dispute that contention, and we agree as well. Plaintiff then argues that (1) defendants' actions constituted a violation of his right of privacy, (2) the trial court failed to set forth adequate findings of fact and conclusions of law in rendering its decision, and (3) he presented sufficient facts to withstand summary judgment and allow the case to proceed to determination by a jury.
We find plaintiff's arguments unpersuasive. We hold that the placement of a GPS device in plaintiff's vehicle without his knowledge, but in the absence of evidence that he drove the vehicle into a private or secluded location that was out of public view and in which he had a legitimate *652 expectation of privacy, does not constitute the tort of invasion of privacy. Accordingly, we affirm.

I.
Plaintiff and Mrs. Villanova were married in 2000. Plaintiff filed a divorce action on May 13, 2008, and a divorce judgment was ultimately entered on September 3, 2009. Plaintiff is a Gloucester County Sheriff's Officer, and at all relevant times worked in the warrant unit of the sheriff's department.
Applying the Brill[1] standard, these are the pertinent facts. Suspecting her husband of infidelity, Mrs. Villanova retained defendants in 2007 to investigate the issue. In the course of that arrangement, Leonard suggested that Mrs. Villanova purchase and install a GPS device on a family vehicle regularly driven by plaintiff in order to track his movements. She purchased the device through the internet and placed it in the glove compartment of a GMC Yukon-Denali, which was jointly owned by the parties. This vehicle was insured only for personal use, not work-related activity. Mrs. Villanova paid the insurance premiums out of a joint account held by her and plaintiff. Plaintiff was the primary user of the vehicle.
Plaintiff certified that, in addition to his primary personal use of the vehicle within the family, the vehicle "was often utilized by me to check out the presence of fugitives and/or others on whom I have responsibility of service of [c]ourt documents including warrants." At oral argument on the parties' cross-motions for summary judgment, the judge expressed his skepticism about that asserted fact, noting that it is standard practice for law enforcement officers, while engaged in police activities, to avoid use of their personal private vehicles or to display any other personal identifiers. Plaintiff's counsel explained plaintiff's asserted use of the Denali in his law enforcement activities as follows:
Because of the activities that he has, if he is going from Point A to Point B, and he knows they are going to pick up somebody later that day, if he rides by in his own personal vehicle to see if the vehicle is out there of the person, and that's, what you would find if you had testimony in front of you.
. . . .
Thathe didn't take the vehicle on raids or pickups. That's not our assertion and you will not hear that.
In the divorce action, Mrs. Villanova acknowledged her placement of the GPS device in the Denali glove compartment. Plaintiff asserted a right of privacy violation against her in the divorce action. He also amended the divorce complaint to add a similar claim against defendants. However, the Family Part judge found it inappropriate to expand the divorce proceedings to include the claim against defendants. He therefore dismissed them from that action, though clearly preserving plaintiff's right to assert a separate action against them in the Law Division. Ultimately, in the final resolution of the divorce action, plaintiff waived his right of privacy claim against Mrs. Villanova, but the final judgment of divorce made clear that plaintiff's claim against defendants was "not extinguished/[a]ffected by this waiver against [Mrs. Villanova]."
The GPS device remained in the Denali for about forty days, from approximately July 14, 2007 to August 24, 2007. In her deposition testimony, Mrs. Villanova acknowledged that, from time to time, she obtained reports over the internet from the GPS provider regarding the movements *653 of the Denali. There is nothing in the record before us, however, that specifies the locations revealed by those reports. Further, there is nothing in this record that expressly establishes that Mrs. Villanova passed on any of the information from these reports, either in general or in detail, to defendants.
Defendants contend that the tracking of a vehicle driving on public roadways or other areas in which the public is allowed, cannot constitute an invasion of privacy, because the driver of the vehicle has no expectation of privacy in those circumstances. Plaintiff counters that individuals sometimes drive their vehicles to locations that are not within public view, such as a private parking garage, an impound yard, or a stretch of a lonely beach. Although these hypothetical circumstances might well exist, there is nothing in this record to suggest that any such incident ever occurred during the time the GPS device was in place. Plaintiff further points to the confidential nature of his job-related law enforcement activities. However, as we have described, his use of his personal vehicle in that regard was limited to drive-bys on public streets.

II.
Before analyzing plaintiff's right-of-privacy argument, we briefly address several arguments made by defendants. They contend that plaintiff's claims are barred by the doctrines of res judicata and waiver. We summarily reject this argument. It is plain to us that plaintiff's right to bring this separate Law Division action against defendants was preserved in the divorce proceedings. Defendants also argue that we should reject plaintiff's claims because he has made no prima facie showing of a duty they owed to him. This argument, however, pertains only to the negligence count. Thus, it would not be dispositive of all issues on appeal. In light of our ultimate disposition, we need not discuss it. In the same vein, defendants contend that plaintiff's claim was properly dismissed on summary judgment because he made no prima facie showing of damages. This is because plaintiff sought no medical or psychiatric treatment or advice and merely made the bald assertion that the presence of the GPS device in his vehicle caused him substantial and permanent emotional distress. Defendants' arguments in this regard pertain to negligence principles. Whether the intentional tort count could survive summary judgment with respect to damages is not as clear and has not been adequately briefed by the parties. Nevertheless, because of our ultimate disposition, we need not address the issue.
We now turn to the substantive issues that are pivotal to this appeal.
Summary judgment should be granted where there is no "`genuine issue of material fact requiring disposition at trial.'" Brill, supra, 142 N.J. at 530, 666 A.2d 146 (quoting Ledley v. William Penn Life Ins. Co., 138 N.J. 627, 642, 651 A.2d 92 (1995)). "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any particular deference." Manalapan Realty v. Manalapan Twp. Comm., 140 N.J. 366, 378, 658 A.2d 1230 (1995). Accordingly, appellate courts review motions for summary judgment de novo and apply the same standard as the trial court. Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J.Super. 162, 167, 704 A.2d 597 (App. Div.), certif. denied, 154 N.J. 608, 713 A.2d 499 (1998).
When deciding a motion for summary judgment, the court must determine whether "the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder *654 to resolve the alleged disputed issue in favor of the non-moving party." Brill, supra, 142 N.J. at 540, 666 A.2d 146. Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c).
The New Jersey Constitution provides: "All persons are by nature free and independent, and have certain natural and unalienable rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing, and protecting property, and of pursuing and obtaining safety and happiness." N.J. Const. art. 1, par. 1. This provision guarantees individuals the right of privacy. Doe v. Poritz, 142 N.J. 1, 89, 662 A.2d 367 (1995). "The right of privacy has been defined as `the right of an individual to be . . . protected from any wrongful intrusion into his [or her] private life which would outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities.'" Burnett v. Cnty. of Bergen, 402 N.J.Super. 319, 332, 954 A.2d 483 (App.Div.2008) (quoting McGovern v. Van Riper, 137 N.J.Eq. 24, 32, 43 A.2d 514 (Ch.1945), aff'd 137 N.J.Eq. 548, 45 A.2d 842 (E. & A.1946)), rev'd, in part, on other grounds, 198 N.J. 408, 968 A.2d 1151 (2009).
As a tort, invasion of privacy encompasses "four distinct kinds of invasion of four different interests of the plaintiff." Rumbauskas v. Cantor, 138 N.J. 173, 179, 649 A.2d 853 (1994) (quoting William L. Prosser, The Law of Torts § 112 (3d ed.1964)). These are:
(1) intrusion (e.g., intrusion on plaintiff's physical solitude or seclusion, as by invading his or her home, illegally searching, eavesdropping, or prying into personal affairs); (2) public disclosure of private facts (e.g., making public private information about plaintiff); (3) placing plaintiff in a false light in the public eye (which need not be defamatory, but must be something that would be objectionable to the ordinary reasonable person); and (4) appropriation, for the defendant's benefit, of the plaintiff's name or likeness.
[Id. at 180, 649 A.2d 853.]
Plaintiff alleges that by placing a GPS tracking device in his vehicle Mrs. Villanova intruded upon his solitude and seclusion, thus violating his privacy. He further contends that defendants violated his privacy by suggesting Mrs. Villanova's course of action. As we will explain, this record simply does not establish that any invasion of plaintiff's right of privacy occurred. Therefore, we need not dwell on the threshold issue of whether defendants' mere suggestion that Mrs. Villanova place the device in plaintiff's vehicle constituted a culpable act in this context.
"`One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his [or her] private affairs or concerns, is subject to liability to the other for invasion of his [or her] privacy, if the intrusion would be highly offensive to a reasonable person.'" Figured v. Paralegal Technical Servs., Inc., 231 N.J.Super. 251, 256, 555 A.2d 663 (App.Div.1989) (quoting Restatement (Second) of Torts § 652B (1977)), appeal dismissed, 121 N.J. 666, 583 A.2d 350 (1990). The comments in the Restatement reveal that a defendant is only liable if he or she intrudes into a private place. Restatement (Second) of Torts § 652B comment. c (1977).
As we have stated, there is no direct evidence in this record to establish that during the approximately forty days the *655 GPS device was in the Denali glove compartment the device captured a movement of plaintiff into a secluded location that was not in public view, and, if so, that such information was passed along by Mrs. Villanova to defendants. Plaintiff urges that we find, for summary judgment purposes, that an inference could reasonably be drawn from defendants' report to establish such a fact through circumstantial evidence.
That report, encompassing just over two pages, was issued by defendants on August 28, 2007. It was accompanied by an invoice of the same date, charging Mrs. Villanova for twenty-seven hours of "[c]ontinuous surveillance of Kenneth Villanova, Jr."[2]
The report, signed by Leonard, reveals that defendants began their investigation by conducting a name search for the woman with whom plaintiff was suspected of having an affair. They found the woman's most recent address as well as some prior addresses. On June 14, 2007, Leonard drove to the most recent address. After waiting several hours and seeing no activity, he left. He went there on several subsequent visits, again finding no activity. At one point, he knocked on the door, but received no answer. The residence had a for-sale sign in front of the property. Thus, there was apparently uncertainty as to whether the woman still lived there.
Leonard also stated that on several occasions he and his staff attempted to search the "Heritage Road area" because it was a previous address and a current address of the woman's family, although not specifically of the woman with whom plaintiff was suspected of having an affair.
Leonard further described in the report that he attempted to place plaintiff under surveillance as he left his house on several occasions. On one occasion, he utilized two investigators to follow plaintiff, but it was apparent that plaintiff was aware that he was being followed.
Leonard then explained that, after speaking with Mrs. Villanova and "having [her] obtain a tracker device to document [her] husband's vehicle movements, we attempted to follow him on July 28, 2007, a Saturday." This was about two weeks after the GPS device was placed in the Denali glove compartment. From this single sentence, plaintiff argues that a reasonable inference can be drawn that Mrs. Villanova was passing along the information received from the GPS service to defendants. Perhaps that is so. However, what follows in the report in no way suggests that any such information, if received by defendants, led them to any private location.
What follows is simply a recitation that on July 28, 2007, the investigators went to the Heritage Road area and pulled into a particular driveway, where they remained for several minutes. The report noted that the character of this location made it virtually impossible to conduct surveillance without being detected. The report continued: "Upon leaving the Heritage Road area, leaving the driveway, a female was viewed inside your husband's vehicle in the *656 passenger's side with your husband driving." They followed the vehicle for a time, lost sight of it for about seven minutes, and then resumed following it.
Leonard explained that it was obvious to him that plaintiff knew he was being followed. He attempted to continue the surveillance but was pulled over by local police officers, first in an unmarked vehicle, and then followed up with a marked vehicle. The officers questioned Leonard about what he "was doing and who [he] was following." Leonard identified himself as a private investigator and asserted that, "by law, [he] did not have to provide that information." In response, "[o]ne officer stated that he thought he should go through [Leonard's] files that [Leonard] had on hand." Leonard then asked for a supervisor to come to the location. The officers then ceased their questioning and instructed Leonard to leave the area "which [he] did and our handling of this matter was discontinued." The report concluded that, pursuant to Mrs. Villanova's instructions, defendants discontinued all handling of the matter.
Everything described in this report occurred on public roadways and in plain view of the public. There is nothing in this report that could support an inference that any surveillance of plaintiff extended into private or secluded locations that were out of public view and in which plaintiff had a legitimate expectation of privacy.
The record contains, for example, no deposition of Leonard, in which he could have been specifically asked such questions. The record does contain portions of the transcript of Mrs. Villanova's deposition. She was never asked whether she passed along to defendants any of the information she received from the GPS company. She had apparently provided through discovery thirty pages of hard copy of the reports she had received from the GPS company, and those thirty pages were marked for identification at the deposition. However, the record does not contain any of those pages, and thus they can provide no basis to establish that plaintiff was ever tracked in a private location. Further, plaintiff's counsel asked Mrs. Villanova whether anyone else had a copy of those GPS reports, to which she responded "[o]nly my attorney."
From all of this, a factfinder might, at the very most, infer that Mrs. Villanova verbally passed on to defendants information from the GPS company's reports and that defendants used that information as a basis for proceeding on July 28, 2007 to the Heritage Road area. However, there is nothing to establish that any possible invasion of plaintiff's privacy and seclusion ever occurred. Such a finding would require that he was in a location where he had a reasonable expectation of privacy. The fact that such an eventuality could have occurred is not sufficient to establish a cause of action for the tort of invasion of privacy.
A simple illustration is helpful to our analysis. Suppose Mrs. Villanova placed the device in her husband's vehicle at 2:00 p.m. while the vehicle was parked in the driveway of the family home; then, at 2:30 p.m., plaintiff drove on public streets to a local convenience store, purchased a newspaper, and returned home in a matter of minutes; and then, at 3:00 p.m., either Mrs. Villanova had a change of heart and removed the device without her husband ever knowing about it, or, alternatively, he discovered the device and removed it himself. We do not think a tort of invasion of privacy would have been committed. Although the events here intermittently covered about forty days, what happened was legally no different.
There is no liability under this tort theory "for observing [a plaintiff] or even taking *657 his [or her] photograph while he [or she] is walking on a public highway, since he [or she] is not then in seclusion, and his [or her] appearance is public and open to the public eye." Restatement (Second) of Torts § 652B comment. c (1977). "A person traveling in an automobile on public thoroughfares has no reasonable expectation of privacy in his [or her] movements from one place to another." United States v. Knotts, 460 U.S. 276, 281, 103 S.Ct. 1081, 1085, 75 L.Ed.2d 55, 62 (1983).
Our de novo review of the motion record satisfies us that summary judgment was properly granted in favor of defendants. We are further satisfied that the judge's findings of fact and conclusions of law were adequately expressed.
Affirmed.
NOTES
[1] Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 666 A.2d 146 (1995).
[2] Plaintiff urges us to find that defendants engaged in "continuous" surveillance of him during the approximately forty days the GPS device was in place. The suggestion is that defendants were monitoring plaintiff's movements on a twenty-four hours per day, seven days per week basis during this period. This would further have the potential to bolster a suggestion that plaintiff might have driven the Denali into some private area during these many hours during this approximately six week period. However, the invoice reflects that only a total of twenty-seven hours were devoted to this task over the entire six weeks, and the report describes what defendants did during those twenty-seven hours. Defendants' surveillance therefore was clearly not continuous.