The **COLLEGE OF CHARLESTON FOUNDATION, Plaintiff,**

v.

**Benjamin HAM, Defendant.**

**C.A. No. 2:07–3264–PMD.**

United States District Court,
D. South Carolina,
Charleston Division.

Jan. 24, 2008.

Bryan Francis Hickey, Haynsworth Sinkler Boyd, Greenville, SC, Neil D. Thomson, Haynsworth Sinkler Boyd, Charleston, SC, for Plaintiff.

Eli Alan Poliakoff, Janene Boyce Smith, John C. McElwaine, Nelson Mullins Riley and Scarborough, George J. Kefalos, George J. Kefalos Law Office, Charleston, SC, for Defendant.

## ORDER

PATRICK MICHAEL DUFFY, District Judge.

This matter is before the court on two separate motions. The Plaintiff, the College of Charleston Foundation ("Plaintiff") has filed a Motion to Remand this action back to state court pursuant to 28 U.S.C. § 1147(c) for lack of subject matter jurisdiction. Defendant Benjamin Ham ("Defendant") has filed a Memorandum in Opposition to this Motion. Defendant has also filed a Motion to Dismiss this action under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Plaintiff has filed a Memorandum in Opposition to this Motion. For the reasons set forth herein, the court denies Plaintiff's Motion to Remand and grants in part and denies in part Defendant's Motion to Dismiss.

## BACKGROUND

Plaintiff is the owner of a property known as "Dixie Plantation" in Hollywood, South Carolina. "No Trespassing" signs are posted throughout the property. Dixie Plantation was left to Plaintiff pursuant to a devise which includes certain restrictions on the property's use for commercial purposes. Plaintiff alleges that Defendant, a prominent professional photographer, trespassed onto Dixie Plantation to take a certain picture, entitled "Plantation Road," which he is now offering for commercial sale.

On August 8, 2007, Plaintiff filed a Complaint against Defendant in state court in Charleston County. The Complaint alleged trespass, invasion of privacy, and conversion, and sought an injunction prohibiting further distribution of the photograph and actual, consequential, and punitive damages against Defendant. On September 27, Defendant removed this matter to this court on the grounds that federal copyright law preempts Plaintiff's claims. On October 29, Plaintiff filed a Motion to Remand, asserting that removal was improper because this court lacks subject matter jurisdiction, as all claims are governed exclusively by state law. Defendant filed a Response in Opposition to Plaintiff's Motion on November 16. Plaintiff filed a Reply to this Response on November 29.

On October 4, 2007, Defendant filed a Motion to Dismiss. Plaintiff filed a Response in Opposition on October 29, which it amended with Defendant's consent on November 9. Defendant filed a Reply to Plaintiff's Response on November 16.

## DISCUSSION

If this court does not have subject matter jurisdiction to hear this case, then any decision on the case's substance and merits would be improper. Therefore, the court's initial inquiry is to decide whether to grant the Plaintiff's Motion to Remand. If that Motion is denied, only then will the court delve into whether or not to dismiss Plaintiff's claims.

### I. Motion to Remand

The burden of demonstrating jurisdiction resides with "the party seeking removal." *Dixon v. Coburg Dairy, Inc.,* 369 F.3d 811, 816 (4th Cir.2004) (citing *Mulcahey v. Columbia Organic Chems. Co.,* 29 F.3d 148, 151 (4th Cir.1994)). The court is obliged to construe removal juris-

diction strictly because of the "significant federalism concerns" implicated. *Id.* Therefore, "[i]f federal jurisdiction is doubtful, a remand [to state court] is necessary." *Id.*

Section 1441 of Title 28 provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). In this case, Defendant alleges that removal was proper because the district court had original jurisdiction to hear Plaintiff's case under 28 U.S.C. § 1331. Section 1331 grants district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Thus, the court must decide whether Plaintiff's claims "aris[e] under the Constitution, laws, or treaties of the United States." *Id.*

Section 1447(c) of the United States Code provides that, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." Plaintiff asserts that all three causes of action alleged in the Complaint—conversion, trespass, and invasion of privacy—are firmly grounded in state law and do not present a question of federal law, and thus this court lacks subject matter jurisdiction. Defendant disagrees, arguing that Plaintiff's claim is inextricably tied to federal copyright law, and therefore asserts that this case belongs in federal court.

Jurisdiction is established based on the allegations of the plaintiff's complaint filed in state court. *See Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). Federal courts are presumptively without jurisdiction over civil matters, and the burden

of establishing the contrary rests upon the party seeking jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). Removal jurisdiction is strictly construed; in doubtful cases, the action must be remanded. *See Mulcahey,* 29 F.3d at 151.

Generally, the presence of federal question jurisdiction is determined by the well-pleaded complaint rule. *Gully v. First Nat'l Bank,* 299 U.S. 109, 112–13, 57 S.Ct. 96, 81 L.Ed. 70 (1936); *Louisville & Nashville R.R. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). In other words, federal question jurisdiction exists "only when a federal question is presented on the face of the plaintiff's properly-pleaded complaint." *Caterpillar, Inc.,* 482 U.S. at 392, 107 S.Ct. 2425; *King v. Marriott Int'l, Inc.,* 337 F.3d 421, 428 (4th Cir.2003). Thus, pursuant to the well-pleaded complaint rule, the plaintiff is the master of his claim, and he may avoid federal jurisdiction by exclusive reliance on state law. *Id.* (internal citations omitted); *see also The Fair v. Kohler Die & Specialty Co.,* 228 U.S. 22, 25, 33 S.Ct. 410, 57 L.Ed. 716 (1913) ("Of course, the party who brings a suit is master to decide what law he will rely upon.") (Holmes, J.); *Merrell Dow Pharm., Inc. v. Thompson,* 478 U.S. 804, 809, n. 6, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986) ("Jurisdiction may not be sustained on a theory that the plaintiff has not advanced."); *Great Northern R. Co. v. Alexander,* 246 U.S. 276, 282, 38 S.Ct. 237, 62 L.Ed. 713 (1918) ("[T]he plaintiff may by the allegations of his complaint determine the status with respect to removability of a case."). Accordingly, under the well-pleaded complaint rule, courts "ordinarily ... look no further than the plaintiff's complaint in determining whether a lawsuit raises issues of federal law capable of creating federal-question juris-

diction under 28 U.S.C. § 1331." *Custer v. Sweeney*, 89 F.3d 1156, 1165 (4th Cir.1996). Moreover, "[w]hen evaluating the propriety of removal, the district court must determine the nature of plaintiff's claims from the face of the complaint at the time the petition for removal was filed." *Martin v. Lagualt*, 315 F.Supp.2d 811, 814 (E.D.Va.2004) (citation omitted).

■ However, one significant exception to the well-pleaded complaint rule is the doctrine of complete preemption. Complete preemption "refers to that 'small category of statutes that 'authoriz[e] removal of actions that sought relief only under state law.' " *Lontz v. Tharp*, 413 F.3d 435, 438 (4th Cir.2005) (quoting *Alongi v. Ford Motor Co.*, 386 F.3d 716, 724 (6th Cir.2004) (in turn quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6–7, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003))). Complete preemption is appropriate only "if the subject matter of a putative state law claim has been totally subsumed by federal law—such that state law cannot even treat on the subject matter ..." *Id.* at 439–40. The purpose of the doctrine is to "prevent[ ] plaintiffs from 'defeat[ing] removal by omitting to plead necessary federal questions.' " *Id.* at 440 (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 22, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)). The Fourth Circuit has explained the difference between complete preemption and ordinary preemption as follows:

> In assessing whether defendants have carried their burden we may not conflate "complete preemption" with "conflict" or "ordinary" preemption. While these two concepts are linguistically related, they are not as close kin jurisprudentially as their names suggest. Complete preemption is a "jurisdictional doctrine," while ordinary preemption simply declares the primacy of federal law, regardless of the forum or the

> claim. Ordinary preemption has been categorized as a federal "defense to the allegations." And as a mere defense, the "preemptive effect of a federal statute ... will not provide a basis for removal." Even if preemption forms the very core of the litigation, it is insufficient for removal.

> By contrast, when complete preemption exists, there is "no such thing" as the state action, since the federal claim is treated as if it appears on the face of the complaint because it effectively displaces the state cause of action. Complete preemption thus "transform[s] the plaintiff's state-law claims into federal claims." Since the complaint is then understood to state a federal question, the well-pleaded complaint rule is satisfied, thereby justifying removal under § 1441(b).

> Recognizing that complete preemption undermines the plaintiff's traditional ability to plead under the law of his choosing, the Supreme Court has made clear that it is "reluctant" to find complete preemption. The Court has, in fact, found complete preemption in only three statutes. Unsurprisingly, therefore, the Court has articulated exacting standards that must be met before it will find complete preemption. Most notably, the congressional intent that state law be entirely displaced must be clear in the text of the statute.

*Id.* at 440–41 (citations omitted).

The Fourth Circuit has explicitly held that § 301 of the Copyright Act can be the basis for the complete preemption of a state law cause of action. The court wrote:

> We likewise conclude that Congress intended that actions pre-empted by § 301(a) of the Copyright Act be regarded as arising under federal law. First, Congress employed a broad mandatory

preemption provision for causes of action equivalent to copyright claims. Concerning this provision, Congress has stated, "The declaration ... in section 301 is intended to be stated in the clearest and most unequivocal language possible, so as to foreclose any conceivable misinterpretation of its unqualified intention that Congress shall act preemptively." Thus, Congress has clearly indicated that state-law claims which come within the subject matter of copyright law and which protect rights equivalent to any of the exclusive rights within the scope of federal copyright law, such as Rosciszewski's claim that Arete copied PDI's copyrighted ORBIS computer program, should be litigated only as federal copyright claims.

*Rosciszewski v. Arete Assoc., Inc.*, 1 F.3d 225, 232 (4th Cir.1993) (citations omitted). That court went on to say:

> Accordingly, we hold that the preemptive force of § 301(a) of the Copyright Act transforms a state-law complaint asserting claims that are preempted by § 301(a) into a complaint stating a federal claim for purposes of the well-pleaded complaint rule. Since claims preempted by § 301(a) arise under federal law, removal of actions raising these claims to federal district court is proper.

*Id.* at 232–33. *See also Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 304–305 (2d Cir.2004) (holding that Congress intended § 301(a) of the Copyright Act to preempt state-law claims); *United States ex rel Berge v. Univ. of Alabama*, 104 F.3d 1453, 1463 (4th Cir. 1997) (same); *Ehat v. Tanner*, 780 F.2d 876, 877–79 (10th Cir.1985) (same).

 There is no question, then, that § 301 of the Copyright Act can provide the basis for the complete preemption, and therefore proper removal, of a state-law claim. Furthermore, if any single cause of action is preempted by § 301, then the removal of all causes of action to this court is proper under 28 U.S.C. § 1441(c).[1] *See Rosciszewski*, 1 F.3d at 229 n. 3 (holding that all seven alleged causes of action were properly removed even where only one of the seven had been properly judged to be preempted).

 When determining whether a state law cause of action is completely preempted by a federal law, "no preemption occurs if the state law claim requires proof of an extra element in addition to, or instead of, those elements that make up the preemptive federal claim." *County of Delaware v. Gov't Sys., Inc.*, 230 F.Supp.2d 592, 598 (E.D.Pa.2002). This is known as the "extra element" test. However, "[t]he extra element of the state cause of action must be one which changes the nature of the action so that it is 'qualitatively different' from a copyright infringement claim." *Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp.*, 351 F.Supp.2d 436, 442 (M.D.N.C.2005) (citation omitted). *See also Crow v. Wainwright*, 720 F.2d 1224, 1226 (11th Cir.1983) (holding that cause of action will not be preempted only if it differs "in a meaningful way."). In other words, "the core of both causes of action" must be the same. *Rosciszewski*, 1 F.3d at 230.

> The Copyright Act provides that:
> [A]ll legal or equitable rights that *are equivalent to* any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within

---

1. 28 U.S.C. § 1441(c) provides that "[w]henever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein...."

the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title.

17 U.S.C. § 301(a) (2006) (emphasis added). The Act also states that "[n]othing in this title annuls or limits any rights or remedies under the common law or statutes of any State with respect to ... (3) activities violating legal or equitable rights that are *not equivalent to* any of the exclusive rights within the general scope of copyright as specified by section 106 ..." 17 U.S.C. § 301(b)(3) (2006) (emphasis added).

The Fourth Circuit has interpreted § 301(a) as setting up the following test to determine whether a state law claim is preempted:

> We have recently held that the statute thus sets up a two-prong inquiry to determine when a state law claim is preempted; first, the work must be "within the scope of the 'subject matter of copyright' as specified in 17 U.S.C. §§ 102, 103," and second, "the rights granted under state law" must be "equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. § 106."

*Berge,* 104 F.3d at 1463 (citations omitted). In the present case, both sides concede that a photograph of the kind at issue in the present litigation is a work of the kind that is generally within the scope of copyright. However, the sides disagree as to whether the causes of action involve the "subject matter of copyright," since the Plaintiff claims that the subject matter of a photo is different than a photo itself. (Pl.'s Mem. in Support of Mot. to Remand at 10.) However, courts, including the Fourth Circuit in *Berge,* have held that the underlying idea of a copyrightable work also falls under the scope of the Copyright Act, *see Berge,* 104 F.3d at 1463, and so

this court holds that the underlying image of "Plantation Road" is within the scope of the "subject matter of copyright" as defined by statute.

The dispute, then, is whether the rights Plaintiff seeks to vindicate are "equivalent to any exclusive rights within the scope of federal copyright." Another federal court faced with deciding a similar issue turned to a well-known hornbook text on legal copyright for guidance on how to determine whether state law rights were "equivalent" to federal copyright rights:

> A right which is "equivalent to copyright" is one which is infringed by the mere act of reproduction, performance, distribution or display.... If under state law the act of reproduction, performance, distribution, or display, ... will in itself infringe the state created right, then such right is preempted. But if other elements are required, in addition to or instead of, the acts of reproduction, performance, distribution or display, in order to constitute a state created cause of action, then the right does not lie "within the general scope of copyright," and there is no preemption.

*Collezione Europa U.S.A., Inc. v. Hillsdale House, Ltd.,* 243 F.Supp.2d 444, 449 (M.D.N.C.2003) (quoting 1 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 1(B)(3)).

The fulcrum on which this issue turns, then, is whether there is an extra element in all of Plaintiff's state law causes of action which make those causes of action materially distinguishable from an action merely involving the act of reproduction, performance, distribution, or display, which would properly be brought as a federal copyright infringement suit.

One of Plaintiff's causes of action is for conversion. In its Complaint, Plaintiff makes the following allegations:

23. That the Defendant, by developing and taking photographs while trespassing on said property, converted the property to his own use; and this use was without the Plaintiff's permission.

24. That the taking and conversion of the images and photographs developed by the Defendant was done for personal and commercial gain, with a reckless disregard for Plaintiff's rights.

25. That the Defendant has developed at least one photograph unlawfully taken from Dixie Plantation: named "Plantation Road," which he has sold and is continuing to sell reproductions and copies of on the commercial market.

26. That "Plantation Road" is an image that is unique and distinct to Dixie Plantation and the Defendant is not entitled to convert this image for his personal use and/or commercial gain.

27. That the commercial sales of "Plantation Road" represent a continuous trespass and intrusion of the Plaintiff's private rights to Dixie Plantation; an act that causes Plaintiff irreparable harm and injury.

28. That the Defendant's conversion of the image/photograph of "Plantation Road" has served to dilute and unlawfully expose the unique image and representation of Dixie Plantation.

(Complaint ¶¶ 23–28.) Defendant claims that Plaintiff's conversion claim is centered around the photograph, which is protected by the Copyright Act, and that the rights it is trying to vindicate are rights that are protected by the Copyright Act. (Def.'s Resp. Mem. at 3–6.) Plaintiff claims that its conversion cause of action has nothing to do with copyright, as it "does not claim that it is the author of a photograph or is trying to retain a copyright/authorship interest in the photograph." (Pl.'s Mem. in Supp. of Mot. to Remand at 9.) Instead, Plaintiff claims that "it is the right to prevent and/or control photography of subject matter on restricted property which was stripped from the Plaintiff—not the photograph itself." *Id.* at 18.

 "Conversion is the unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of the condition or the exclusion of the owner's rights." *Crane v. Citicorp Nat'l Servs., Inc.,* 313 S.C. 70, 73, 437 S.E.2d 50, 52 (S.C.1993). "Conversion may arise by some illegal use or misuse, or by illegal detention of another's personal property." *Regions Bank v. Schmauch,* 354 S.C. 648, 667, 582 S.E.2d 432, 442 (S.C.Ct.App.2003).

While no court has before faced this precise issue, a number of federal courts have decided factually similar cases which are instructive to the present matter.

In *Berge,* the Fourth Circuit decided a case involving a doctoral candidate whose dissertation was allegedly plagiarized by professors and a graduate student at another university. Berge, the plaintiff, filed several causes of action against the defendants, including a claim for conversion. Berge argued that her conversion claim should not be preempted, because the cause of action rested not upon the conversion of the paper itself, which she conceded was protected by copyright, but upon the conversion of the "ideas and methods" she developed in that paper. 104 F.3d at 1463. The court rejected this argument, writing:

> Berge's argument that her conversion claim is not preempted because it is her "ideas and methods," which are explicitly excluded from copyright protection, that have been converted rests on a fallacious interpretation of the Copy-

right Act. In other words, Berge wants to argue that ideas embodied in a work covered by the Copyright Act do not fall within the scope of the Act because the Act specifically excludes them from protection. But scope and protection are not synonyms. Moreover, the shadow actually cast by the Act's preemption is notably broader than the wing of its protection.

*Id.* The Fourth Circuit went on to note that, "it is hornbook law that a 'state law action for conversion will not be preempted if the plaintiff can prove the extra element that the defendant unlawfully retained the physical object embodying plaintiff's work.' " *Id.* (quoting Paul Goldstein, Copyright, Patent, Trademark and Related State Doctrines 777 (3d ed.1993) (emphasis added)). The court concluded that Berge's claim that the professors and graduate student had converted her ideas and methods did not have an extra element that would differentiate it from a copyright claim, and it was thus preempted by § 301 of the Copyright Act.

The Fifth Circuit decided a case involving an allegation that the well-known musical group ZZ Top committed conversion by recording and distributing a song originally written and recorded by another artist, called the Nightcaps. *Daboub v. Gibbons,* 42 F.3d 285 (5th Cir.1995). That court held that the conversion of a musical work should undoubtedly have been brought as a copyright claim, and was thus preempted, writing:

> The Nightcaps' argument is like a ventriloquist's attempt to present a copyright action in the voice of state law claims. However, if the language of the act could be so easily circumvented, the preemption provision would be useless, and the policies behind a uniform Copyright statute would be silenced.

*Id.* at 290. The Sixth Circuit decided a similar case involving a song, and also held

that it was preempted by the Copyright Act. *See Murray Hill Publ'ns, Inc. v. ABC Commc'ns, Inc.,* 264 F.3d 622, 636–37 (6th Cir.2001).

Another district court within this circuit heard a case involving a conversion claim related to a corporation's excessive use of software above and beyond that authorized by its license. *Madison River Mgmt.,* 351 F.Supp.2d at 444–45. The defendant, in a counterclaim, claimed that it had only granted the plaintiff license to use 15 copies of the software, and plaintiff had actually used in excess of 80, and thus plaintiff unlawfully converted many copies of defendant's software. The court rejected this claim as preempted by the Copyright Act, holding that, "[w]here a plaintiff, however, alleges only unlawful retention of its intellectual property rights, the conversion claim is preempted." *Id.* (citing *Berge,* 104 F.3d at 1463).

A district court in Connecticut heard a case involving a screenwriter whose idea for a film was allegedly stolen by the filmmakers the Wayans brothers to make the film *White Chicks. A Slice of Pie Productions, LLC v. Wayans Brothers Entm't,* 392 F.Supp.2d 297 (D.Conn.2005). The screenwriter alleged that he had sent the Wayans brothers a copy of his script in hopes of having them produce the film, but that they merely took the idea from his script and made their own film, without giving him any sort of acknowledgment or residual profits. The court held that this conversion claim was preempted, since the defendants' alleged conversion of plaintiff's idea for a movie could only be properly brought as a copyright claim. *Id.* at 316–17. The court wrote that:

> State law conversion claims are not *per se* preempted. When a claim is based upon the possession of chattel, it alleges an extra element and thus avoids preemption. However, when the right that

plaintiff seeks to protect is "coextensive" with rights protected by the Copyright Act, a claim of conversion is preempted. *Id.* at 317 n. 8.

A court in the Eastern District of Pennsylvania ruled that a claim of conversion was *not* preempted by the Copyright Act. *County of Delaware*, 230 F.Supp.2d at 601–602. The plaintiff in that case was a county who sued a software provider which had agreed to provide the county with a software program for the government's accounting needs. When the parties got into a disagreement over whether the defendant had delivered its program on time, whether the program functioned as promised, and whether third party consultants could be allowed access to the program, the defendant remotely deleted vital portions of the software's source code, which interfered with the program's usefulness. Plaintiff alleged that defendant had converted its right to have the program with that source code included. The court held that this claim was "not qualitatively similar" to any claim under the Copyright Act, since plaintiff did not own the source code, but was "attempting to enforce property rights which allegedly arise from" the contract between the parties. *Id.* at 602.

 Federal courts, then, have generally found that when a conversion claim encroaches upon the subject matter covered under federal copyright law, the claim is preempted and should be brought as a copyright claim. A conversion cause of action only passes the extra element test where there was actually physical property converted, or some other circumstance, like the contract between the two parties in *County of Delaware*, which makes the conversion cause of action fundamentally distinct from the kind of claim that could be brought under the Copyright Act.

Plaintiff points out that "the trees and road Plaintiff owns are not intellectual property. The 'No Trespassing' signs

posted around the property's boarders are not intellectual property. The grant deed prohibiting commercial use of the property is not intellectual property." (Pl.'s Reply at 5.) While this is undoubtedly true, it is also true that Plaintiff has not alleged that Defendant converted the trees, the road, the "No Trespassing" signs, or the grant deed. What Plaintiff has alleged is that Defendant has converted "the image/photograph of 'Plantation Road.'" (Complaint ¶ 28.)

 Despite Plaintiff's assertions that there is an "extra element," in the form of a violation of its property rights, to this conversion claim than there would be for a copyright violation claim, the court simply cannot see how the gravamen of the conversion claim is not simply this: that Defendant unlawfully photographed an image belonging to Plaintiff and is now commercially distributing it. Plaintiff has not asserted that Defendant took any tangible object, so the only possible property of Plaintiff's that Defendant is alleged to have converted is the image of "Plantation Road." Disputes over ownership, use, or distribution of photographs and images are properly the realm of federal copyright law. *See, e.g., Henry v. Nat'l Geographic Soc'y*, 147 F.Supp.2d 16 (D.Mass. 2001) (applying Copyright Act to dispute over ownership, distribution, and proceeds of photographs). Even if Plaintiff is not asserting ownership over the "Plantation Road" photograph itself, it is surely asserting ownership over the underlying image of the portion of the Dixie Plantation property represented in the photograph.

This court concludes that Plaintiff's conversion cause of action is not "qualitatively different" than a cause of action for copyright infringement. Since "the core of both causes of action" is the same, there is no "extra element" to the conversion cause of action. Therefore, the right Plaintiff

seeks to vindicate by bringing the conversion claim is "equivalent" to a right that federal law and policy dictates is exclusively the province of the Copyright Act. For this reason, Plaintiff's conversion claim is completely preempted by § 301 of the Copyright Act, meaning that this court has subject matter jurisdiction over such a claim under 28 U.S.C. § 1441(b). This also means that this court has jurisdiction to decide the other two causes of action, for trespass and invasion of privacy, under § 1441(c), as the Fourth Circuit explicitly held in *Rosciszewski*, 1 F.3d at 229 n. 3. This action was therefore properly removed by Defendant, and remanding this case back to the Charleston County Court of Common Pleas would be improper.

Accordingly, Plaintiff's Motion to Remand is denied.

## II. Motion to Dismiss

Defendant moves to dismiss Plaintiff's action under Federal rule 12(b)(6) for failure to state a claim upon which relief can be granted.

The Supreme Court recently altered the pleading requirements under Rule 8 and the conditions under which a court may grant a motion to dismiss an action under Rule 12. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The *Twombly* decision explicitly overruled the prior standard under which a court could only dismiss an action if "no set of facts" would support such an action. *Id.* at 1968 (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The proper standard, the Court held, was that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 1969. The Court emphasized that this does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its

face." *Id.* at 1974. A complaint should not be dismissed unless it is certain that the plaintiff is not entitled to relief under any legal theory that might plausibly be suggested by the facts alleged. *Mylan Labs. Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993).

### A. Preemption

 Defendant asserts that both Plaintiff's conversion and trespass claims are preempted by the Copyright Act, and thus should be dismissed by the court. (Def.'s Mem. in Support of Mot. to Dismiss at 3.) As discussed above, Plaintiff's conversion claim is preempted by federal law, and is therefore dismissed.

As to Plaintiff's trespass claim, the court must apply the "extra element" test to determine if the right Plaintiff seeks to vindicate is "equivalent" to a right under federal law. In its Complaint, under the Trespass cause of action section, Plaintiff alleges that "the Defendant voluntarily entered Dixie Plantation, and did so without Plaintiff's permission." (Complaint ¶ 15.) The Plaintiff also alleges that "as a direct and proximate cause of the Defendant's actions, the Plaintiff lost use of its private right to the property and lost use and exclusivity of a unique image and representation found on Dixie Plantation." *Id.* ¶ 16.

Defendant asserts that this claim is equivalent to the rights protected by the Copyright Act—specifically, the ability to own and control the image depicted in "Plantation Road." (Def.'s Mem. in Supp. of Mot. to Dismiss at 7.) The court disagrees. While Plaintiff does mention losing the exclusive use of the image, a core element of Plaintiff's trespass claim is that the Defendant physically invaded Dixie Plantation without its permission or knowledge to take the photograph. Unlike Plaintiff's conversion claim, where the as-

sertions in support of the cause of action were virtually identical to the assertions it could have brought before the court in a claim under the Copyright Act, the assertion of physical invasion to interfere with property rights is an "extra element" that would not be alleged in a federal copyright claim.[2]

For this reason, Plaintiff's trespass claim is not preempted by federal law, and will not be dismissed for this reason.

### B. Assertion of Ownership of Copyright

■ Defendant next claims that Plaintiff's claims should be dismissed because they are effectively trying to take ownership of the copyright of the photograph. *Id.* at 8. However, this mischaracterizes the Plaintiff's claim and the remedies it seeks.

The owner of a copyright in a work of art has the right to reproduce, display, and distribute that work. 17 U.S.C. § 106 (2006). Plaintiff explicitly states that it seeks none of these rights. (Pl.'s Mem. in Opp'n at 8.) The only control over the photograph sought by Plaintiff is the right to prevent Defendant from further distributing the work.

Defendant does not seem to dispute that Plaintiff, as property owner, would have had the right to refuse to allow him to take the photograph in question and force him to leave the property. The right Plaintiff actually seeks to exercise is the retroactive application of this very same right. This strikes the court as something altogether different than a simple, straightforward

claim of ownership over the photograph. Accordingly, Plaintiff's causes of action do not constitute a transfer of copyright, and said causes of action will not be dismissed on these grounds.

### C. Sufficient Allegations of Elements of Trespass

■ Defendant's third ground for dismissal relates specifically to Plaintiff's claim of trespass, and asserts that Plaintiff has not sufficiently pled facts that would support a valid claim for trespass under South Carolina law. (Def.'s Mem. in Supp. of Mot. to Dismiss at 9.) Specifically, Defendant argues that South Carolina law requires a claim for some sort of *physical* harm to support a trespass claim. *Id.*

■ "Trespass is any intentional invasion of the plaintiff's interest in the exclusive possession of his property." *Hedgepath v. Am. Tel. & Tel. Co.*, 348 S.C. 340, 357, 559 S.E.2d 327, 337 (S.C.Ct.App.2001). "For a trespass action to lie, 'the act must be affirmative, the invasion of the land must be intentional, and the harm caused by the invasion of the land must be the direct result of that invasion.'" *Hawkins v. City of Greenville*, 358 S.C. 280, 297, 594 S.E.2d 557, 566 (S.C.Ct.App.2004) (quoting *Mack v. Edens*, 320 S.C. 236, 240, 464 S.E.2d 124, 127 (1995)).

The facts as alleged are that Defendant took an affirmative act to intentionally invade Dixie Plantation in order to take photographs, one of which became "Plantation Road." The question before the court, therefore, is whether Plaintiff suffered any

---

**2.** By way of illustration on this point, if Defendant had somehow taken the "Plantation Road" photograph from off the property with some sort of high-magnification equipment, it seems as if Plaintiff would still be asserting that Defendant converted the image, whereas such a fact would immediately defeat Plaintiff's trespass cause of action. In other words, Plaintiff's conversion claim seems completely centered around the allegation that Defendant converted the image, whereas Plaintiff's trespass claim is centered around the allegations that Defendant was on Dixie Plantation without Plaintiff's knowledge or permission when he took the photograph and then converted the image.

sort of harm at all, and if so, whether it was the direct result of Defendant's invasion.

Defendant asserts that while Plaintiff could claim nominal damages from the act of trespass, the fact that it seeks actual, consequential, and punitive damages require an actual showing of harm. (Def.'s Mem. in Supp. of Mot. to Dismiss at 9–10.) Furthermore, Plaintiff asserts that "[i]t is a fundamental tenant [sic] of the law of trespass that the only damages recoverable under this cause of action are *physical* damages proximately caused by intentional invasion." *Id.* at 10 (emphasis in original). Defendant cannot provide any South Carolina authority, and the court is aware of none, that specifically holds that physical harm is a *per se* requirement for the tort of trespass.[3]

This interpretation of the law is also difficult to bring into harmony with certain case law, particularly the Fourth Circuit's decision in *Food Lion. Food Lion, Inc. v. Capital Cities/ABC, Inc.,* 194 F.3d 505 (4th Cir.1999). The *Food Lion* case involved news reporters from the ABC program *PrimeTime Live* who obtained jobs at the grocery store chain at stores in North Carolina and South Carolina under fraudulent pretenses, and then proceeded to surreptitiously film Food Lion's unsavory food handling practices. When the program aired, Food Lion sued the program and its producers, and at trial, obtained a guilty verdict against the defendants on a charge of trespass, among other charges. *Id.* at 509. Food Lion alleged no physical damages, but sought compensation for "loss of good will, lost sales and profits, and dimin-

ished stock value." *Id.* at 511. However, before the damages phase of the trial went before the jury, the trial court instructed the jury that the plaintiff could not recover damages related to these intangible losses on the trespass claim. *Food Lion, Inc. v. Capital Cities/ABC, Inc.,* 964 F.Supp. 956, 958 (M.D.N.C.1997) (explaining the reasoning behind this decision). The court did not, however, hold that Food Lion did not have a case for trespass. On the trespass claim, the jury awarded Food Lion nominal damages of $1.00.

The Fourth Circuit, applying the law of both North Carolina and South Carolina, upheld the ruling of the trial court and the jury's verdict with regard to the trespass claim. *Food Lion,* 194 F.3d at 516–19. The court's inquiry mainly centered around the issue of whether Food Lion somehow consented to have the "employees" videotape the store's food handling practices by hiring them and allowing them into the store. *Id.* The court was untroubled by, and indeed never even raised, the issue of whether Food Lion should be barred from its trespass action because the trespass caused no physical harm.

The court finds the Fourth Circuit's reasoning and holding in this case instructive. As an initial matter, if it is a trespass for a photographer to take photographs without the owner of private property's consent when the owner has at least consented to have the photographer on the property, the court simply cannot see how it would not also be trespass in a similar situation where the difference is that the

---

3. Instead, Defendant cites to the Restatement (Second) of Torts, which provides that:

A trespass on land subjects the trespasser to liability for *physical* harm to the possessor of the land at the time of the trespass, or to the land or to his things, or to members of his household or to their things, caused by

any act done, activity carried on, or condition created by the trespasser, irrespective of whether his conduct is such as would subject him to liability were he not a trespasser.

Restatement (Second) of Torts § 162 (1965) (emphasis added).

owner has not even consented to allow the photographer on the property. Furthermore, the issue of physical versus intangible harm does not represent a *per se* requirement of a holding of trespass, but rather goes to the issue of harm. It is one of the most basic principles of tort law that in order to recover, the plaintiff must show that harm was proximately caused by the plaintiff's actions. Here, Plaintiff has alleged no physical or tangible harm from Defendant's actions. Accordingly, Plaintiff has stated no claim upon which actual or consequential damages can be awarded by this court.

■■■ This does not mean, however, that Plaintiff's claims should be dismissed outright, since Plaintiff also seeks punitive damages and injunctive relief. In the *Food Lion* case, for example, on a separate fraud cause of action, the jury was limited to awarding the plaintiff damages based on actual tangible damages, and awarded the plaintiff a mere $1,400 for these.[4] *Id.* at 511. However, the jury then went on to award the plaintiff over $5.5 million in punitive damages on the same claim. *Id.* So the fact that Plaintiff may not recover any actual or consequential damages in this case does not mean that Plaintiff could not still possibly be awarded punitive damages by a jury.

Furthermore, if a plaintiff is in a unique situation where an award of damages will not be sufficient to make it whole again, a court may undertake an equitable remedy such as an injunction. The South Carolina Supreme Court has held:

> While it is undoubtedly the correct rule that a court of equity will not interfere by injunction in cases of nuisances, trespasses, and like injuries to property when the parties can have complete redress in a court of law, still if it appears that irreparable mischief will be done by

withholding the process, or where the damages that will result to the complainants are incapable of being adequately measured, or where the mischief is such, from its continuous and permanent character, that it must occasion constantly recurring grievances, which cannot be otherwise prevented, a court of equity ought to interfere by injunction to stay the wrong and protect the complainants' property and personal rights from hurt or destruction.

*Carter v. Lake City Baseball Club,* 218 S.C. 255, 62 S.E.2d 470, 478 (S.C.1950) (citation omitted). In the present case, Plaintiff has alleged that it does not wish images of Dixie Plantation which are only viewable from within Dixie Plantation itself to be widely disseminated to the public, and that the sale and distribution of "Plantation Road" forces Plaintiff against its will to violate the prohibition on commercial use of the property, a condition upon which the property was devised. This is precisely the type of harm that is "incapable of being adequately measured," and an occasion upon which this court may possibly exercise its equitable power to issue an injunction.

■■■ Accordingly, while the lack of any allegation of physical harm restricts the type of damages Plaintiff may claim, Plaintiff was not required to allege a physical harm in order to state a claim for trespass, and the trespass cause of action will not be dismissed on this ground.

### D. Whether Plaintiff Enjoys a Right to Privacy

■■■ Defendant's fourth and final ground for dismissing Plaintiff's Complaint is that Plaintiff, as a nonhuman corporate entity, does not have a right to privacy, and therefore could not have suf-

---

4. This was the amount of wages and benefits paid to the "employees" by the store.

fered a tortious violation of such a right. (Def.'s Mem. in Supp. of Mot. to Dismiss at 10–11.) In making this claim, Defendant relies upon language from the South Carolina Court of Appeals which wrote that "[t]his interest in 'privacy' is a distinct aspect of *human* dignity and moral autonomy." *Snakenberg v. Hartford Cas. Ins. Co.*, 299 S.C. 164, 169, 383 S.E.2d 2, 5 (S.C.Ct.App.1989) (emphasis added). Defendant also cites an American Jurisprudence article which states that "[a] corporation, partnership, or unincorporated association has no personal right of privacy ..." 62A Am.Jur.2d *Privacy* § 21 (2005).

For its part, Plaintiff disputes Defendant's claim, asserting that "common sense provides that corporations have private property and information, and that the privacy of a corporation can be invaded and that a wrongful intrusion can adversely affect a corporation and the individuals who conduct its affairs." (Pl.'s Mem. in Opp'n at 16.) Plaintiff provides no legal authority for this "common sense" proposition.[5]

Neither source cited by Defendant for its proposition constitutes binding authority on the subject—American Jurisprudence is a secondary source, and the language from *Snakenberg* could be dismissed as mere dicta, as that case did not involve a corporate entity pursuing an invasion of privacy claim. Most jurisdictions to have considered the issue, though, have held that corporations may not bring suit for invasion of privacy. *See, e.g., Felsher v. Univ. of Evansville*, 727 N.E.2d 783, 787 (Ind.Ct.App.2000) (holding that a corporation "may not properly sue" under invasion

of privacy unless it involves wrongful appropriation of the corporation's name or likeness); *Brooks v. New Mass Media, Inc.*, 1993 WL 116708 at *3 (Conn.Super.Ct.1993) (holding that newspaper corporation could not sue under invasion of privacy); *N.O.C., Inc. v. Schaefer*, 197 N.J.Super. 249, 484 A.2d 729, 735 (1984) ("The corporate plaintiff, because it is a corporation, has no action for invasion of privacy."). This is bolstered by the Restatement, which states that, "[e]xcept for the appropriation of one's name or likeness, an action for invasion of privacy can be maintained *only by a living individual* whose privacy is invaded." Restatement (Second) of Torts § 652 (emphasis added). However, this court does not and need not rule on the issue of whether South Carolina law allows a corporate plaintiff to recover in tort for invasion of privacy, as Plaintiff has failed to allege a necessary element of invasion of privacy.

■■■ The South Carolina Supreme Court has identified three separate acts which may give rise to a cause of action for invasion of the right of privacy:

> The unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities, in such manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities.

*Meetze v. Associated Press*, 230 S.C. 330, 335, 95 S.E.2d 606, 608 (1956) (quoting 41 Am.Jur. *Privacy* § 2). Plaintiff asserts that its cause of action is based upon the

---

**5.** In the section of Plaintiff's Memorandum in Opposition devoted to discussing the invasion of privacy claim, Plaintiff extensively discusses the *Food Lion* case, which the court discussed in regard to Plaintiff's trespass cause of action. However, the plaintiff in that case did not assert an invasion of privacy claim, and the case in no way established or expanded a corporate entity's privacy rights. Accordingly, that case is irrelevant to the invasion of privacy issue.

second of these three underlying acts, "the publicizing of one's private affairs with which the public has no legitimate concern." (Pl.'s Mem. in Opp'n at 17.)

 The South Carolina Supreme Court has explicitly laid out the elements that Plaintiff must allege in order to succeed in a claim under *Meetze's* second cause of action. "The elements of this tort include (1) publicizing, (2) absent any waiver or privilege, (3) private matters in which the public has no legitimate concern, (4) so as to bring shame or humiliation to a person of ordinary sensibilities." *Swinton Creek Nursery v. Edisto Farm Credit,* 334 S.C. 469, 478, 514 S.E.2d 126, 131 (1999). The court can see no way in which the publication of a photo capturing a beautiful image like "Plantation Road" in any way "bring[s] shame or humiliation to a person of ordinary sensibilities." This is especially true in light of the fact that Defendant does not even identify Dixie Plantation as the setting of "Plantation Road." Plaintiff even acknowledges this shortcoming in its pleadings, stating that "[w]hile the corporate Plaintiff does not assert shame and humiliation, there are fact issues as to the impact of the commercial use of the subject matter in the face of restrictions on the property." (Pl.'s Mem. in Opp'n at 17.)

The existence of fact issues regarding Defendant's alleged commercial use of the photograph does not serve as any sort of substitute for meeting the legal requirements of a cause of action. Simply put, Plaintiff has not alleged a necessary requirement of an invasion of privacy cause of action, and admits as much in its Memorandum. *Id.* Since Plaintiff has not alleged how Defendant's actions caused any sort of shame or humiliation, Plaintiff's invasion of privacy cause of action must necessarily fail as a matter of law, and is dismissed for this reason.

Accordingly, Plaintiff's invasion of privacy cause of action is dismissed.

### CONCLUSION

It is therefore **ORDERED,** for the foregoing reasons, that Plaintiff The College of Charleston Foundation's Motion for Remand is hereby **DENIED.** It is further **ORDERED** that Defendant Benjamin Ham's Motion to Dismiss is **GRANTED** as to Plaintiff's conversion and invasion of privacy causes of action, but **DENIED** as to Plaintiff's trespass cause of action.

**AND IT IS SO ORDERED.**